603 A.2d 259

**GENERAL DYNAMICS, LAND SYSTEMS DIVISION, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BLANK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 16, 1990.

Decided Jan. 30, 1992.

Robert A. Cecchini, for petitioner.

William C. Steppacher, for respondent.

Before CRAIG, President Judge, DOYLE, J., and BARRY, Senior Judge.

DOYLE, Judge.

General Dynamics, Land Systems Division (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of the referee which had granted Fred Blank's (Claimant's) petition to set aside a final receipt and awarded benefits for partial disability to Claimant.

Claimant, who had worked for Employer as a millwright for a number of years, slipped and fell on ice in Employer's parking lot while on his way to work on February 3, 1986. He was taken immediately to the Mercy Hospital emergency room where Dr. John Doherty, in his capacity as a panel physician for Employer,[1] examined him and took x-rays. Dr. Doherty found that Claimant had a fracture of the greater trochanter of the left hip and admitted him to the hospital. Claimant was discharged from the hospital on February 12, 1986 but continued visiting Dr. Doherty for treatment for his broken hip until July 14, 1986 when Dr. Doherty released Claimant to return to work in a light-duty capacity with the additional restrictions of no climbing on ladders and avoidance of work on uneven grounds. Claimant collected total disability benefits pursuant to a notice of compensation payable until August 13, 1986 when, although still in pain, he returned to work with limitations and signed a final receipt.

Prior to his injury, Claimant had worked a great deal of overtime. His pre-injury average weekly wage, calculated pursuant to Section 309 of the Act, 77 P.S. § 582, amounted

1. *See* Section 306(e) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531.

to $699.45. Since Claimant was not able to work overtime because of his injury, his average weekly wage after the injury was $564.00. Because of the loss of earnings attributable to the injury, Claimant filed a petition to set aside the final receipt, alleging that he was entitled to benefits for partial disability pursuant to Section 306(b) of the Act, 77 P.S. § 512. Following hearings, the referee granted Claimant's petition and awarded him benefits for partial disability in the amount of $90.30 per week ($699.45 less $564.00 = $135.45 × $\frac{2}{3}$ = $90.30) from August 13, 1986, the date of his return to work, until November 15, 1987 when he was laid off.[2] Employer took an appeal to the Board which affirmed the referee. Employer now seeks review from this Court.

In a petition to set aside a final receipt, the claimant bears the burden of proving that he had not fully recovered from the work-related injury at the time the final receipt had been signed. *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa.Commonwealth Ct. 28, 483 A.2d 593 (1984). Where, as here, medical evidence is necessary to show the causal relationship between the injury and the disability, the claimant must present unequivocal medical evidence to show the requisite causation. *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979).

In its answer to Claimant's petition, Employer acknowledges Dr. Doherty's reports and Claimant's continuing medical disability.[3] On that basis alone there is substantial evidence to set aside the final receipt and the referee correctly did so. The referee also found as a fact that Claimant was prevented from working overtime by his

---

2. Because of the layoff, with its concomitant loss of earnings, Claimant and Employer signed a supplemental agreement which provided for the payment of total disability benefits.

3. Employer's answer states:
   Denied as stated. On the contrary, medical reports from John H. Doherty, Jr., M.D. specifically state that the Claimant, Fred Blank, is able to perform light-duty, restrictive work and did, in fact, return to work.

work-related injury. The referee's finding is based upon the testimony of Dr. Doherty who testified that Claimant's work-related injury prevented him from working more than eight hours a day. Employer argues that Dr. Doherty's testimony is equivocal as to *the date when the injury prevented Claimant from working more than eight hours a day.*

Dr. Doherty, when asked his opinion of the Claimant's medical condition and any limitations or disability, testified:

It is my opinion based upon a reasonable degree of medical certainty that Mr. Blank has a chronic left hip greater trochanteric bursitis which is directly as a result of his greater trochanteric fracture of the left hip which he suffered in a fall at work on February 3rd, 1986. At this point in time I feel that his disability should be considered permanent. I feel that he can work on a light-duty basis *as he has been for the past year,* but I do not think that there is any likelihood that he will be able to improve to the point where he could return to his previous level of heavy duty work.

Q: How about any limitations insofar as the hours of a working day?

A: I think that Mr. Blank should be limited to eight hours per day due to his pain which is aggravated with anything beyond that, eight hours per day and a total of 40 hours per week.

(Deposition of Dr. Doherty, pp. 13–14, 9/15/87) (emphasis added).

Employer argues that this testimony proves nothing concerning Claimant's disability as of August of 1986 when he returned to work. Employer's argument is based upon the premise that Dr. Doherty did not make the recommendation concerning a limitation on hours to be worked until the time of his July 1987 examination of Claimant. Employer's counsel engaged in the following cross-examination of Dr. Doherty.

Q. I have a notation July 11 of 1986 where you indicated he can return to work on light duty and you referred

on direct examination of the two restrictions including no climbing of ladders and no walking on uneven surfaces?

A. That's correct.

Q. Were there any other restrictions put on him at that time?

A. Well, the additional restrictions that would be included with a definition of light duty work as defined by the Dictionary of Occupational Titles.

Q. Did you discuss with him the lifting restrictions on lifting?

A. Yes.

Q. Bending?

A. All of the restrictions that would be applied to a light duty job as defined by the Dictionary of the Occupational Titles were discussed with Mr. Blank.

Q. To your knowledge was, in fact, he given a job of that nature?

A. To my knowledge he was given a job of that nature and that was what he told me.

Q. Now, at this time July 11th of 1986, did you make any restriction as to the number of hours Mr. Blank could work?

A. No, I did not make any specific restrictions, *but it was my understanding that he was not working overtime.*

(Deposition of Dr. Doherty, pp. 18–19, 9/15/87) (emphasis added). Employer argues that Dr. Doherty's testimony does not prove that Claimant was disabled as of his August 1986 return to work because he never informed Claimant of the restrictions concerning the number of hours worked until July of 1987. We believe that Employer's argument misses the mark for two reasons.

██ Dr. Doherty admitted that he placed no restrictions on the number of hours prior to Claimant's return to work. It is clear that no such advice was necessary in light of the

fact that he knew Claimant would not be working overtime. Furthermore, and more important, what Dr. Doherty told Claimant before he returned to work is essentially irrelevant in this regard because the doctor's testimony makes clear that as of Claimant's return to work in August of 1986, Dr. Doherty believed within a reasonable degree of medical certainty that the injury prevented Claimant from working more than eight hours a day, forty hours a week. That testimony constitutes the requisite unequivocal evidence sufficient to meet Claimant's burden of proof.

■ Employer also complains of the referee's acceptance of Dr. Doherty's testimony in light of the testimony of Dr. Thomas F. Clauss, Employer's medical expert who opined that Claimant could have worked overtime. We need say no more than it is the referee's job, and not that of this Court, to judge the credibility of witnesses. Employer's argument concerning the sufficiency of the medical evidence must be rejected.

■ Employer next argues that the award of benefits for partial disability was error because Claimant, in collecting both his salary and partial disability benefits, would then earn more than fellow workers in violation of Section 306(b). That Section pertinently reads:

> For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; ... *and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.* (Emphasis added).[4]

4. Claimant contends that this argument is presented for the first time on appeal and is therefore waived. We recognize that the allegations of error submitted to the Board from the referee's decision are less than precise. Before the referee, however, Employer did present

Employer presented the testimony of Mr. James Vanik, a human resources specialist. He testified that Claimant was one of twelve millwrights working on his shift. Because of a collective bargaining agreement with the union, Employer was required to offer overtime to all of the millwrights essentially on an equal basis.[5] Accordingly, at any given time, no millwright would have thirty-two hours of overtime more than any other millwright. Mr. Vanik was then asked the following question by Employer's attorney:

Q. Now, hypothetically, Mr. Vanik, if Mr. Blank refuses to work overtime hours and receives full wages for 40 hours, and receives, assuming, some sort of additional compensation, if it's determined that he's entitled to that compensation, what effect, if any, does this have on other employees under the labor contract?

. . . . .

A. What may happen is that Mr. Blank would receive more earnings than another employee in his department who, by our employment rules, we would not be oblig— we would not have to offer overtime to him by virtue of the 32–hour spread. So he could have additional earnings where another employee was not—when his additional earnings were not made available to another employee in his work group.

(Notes of Testimony, 11/23/87, pp. 25–26).

It is obvious from Employer's presentation of Mr. Vanik's testimony and the argument in its brief, although it is never specifically articulated, that the average weekly wage to which Employer and Mr. Vanik refer is to fellow employee wages in the period of time after Claimant returned to work. This reference is erroneous because Section 306(b), in referring to the average weekly wage of fellow employ-

evidence that if Claimant were to collect partial disability benefits in addition to his wages he would be making more money than some of his fellow employees. We believe that since Employer did present this evidence the question now presented was placed before the referee and the Board.

5. In all other parts of the plant, the most senior employees are given the first opportunity to accept an overtime assignment.

ees, refers to those wages earned by fellow employees at *the time of the claimant's injury. McGraw–Edison v. Workmen's Compensation Appeal Board (Ardeno),* 120 Pa.Commonwealth Ct. 19, 547 A.2d 1290 (1988), *petition for allowance of appeal denied,* 525 Pa. 607, 575 A.2d 571 (1990); *accord Visintin v. Workmen's Compensation Appeal Board (Hale Pump Co.),* 127 Pa.Commonwealth Ct. 244, 561 A.2d 372 (1989).

In *Visintin,* Judge Barbieri, after first observing that it is the first paragraph of Section 306(b) which is paramount and allows an injured employee to be paid for his loss, and that the limitation of the second paragraph was added only to prevent unjust enrichment, went on to explain:

> In short, we do not believe that the *present* earnings of fellow employees which are less than Claimant's agreed pre-injury wage or earning power can form the basis for a reduction in compensation otherwise payable for Claimant's loss in earning power. We are compelled to this conclusion because we believe it to be inconceivable that the Legislature intended that compensation payable to an injured employee for his compensable partial disability should be reduced, not because he has become more able and is earning more at his partial disability job, but solely because there is a less productive employee earning less now than claimant earned when able-bodied prior to his injury. Such a construction, as is noted in *McGraw–Edison,* fails in the purpose of the Act to "offset the losses of [this] injured worker," for a reason that is not rationally related to that loss.

127 Pa.Commonwealth Ct. at 254, 561 A.2d at 376.

Applying these principles to the facts of this case as found by the referee, Claimant's pre-injury wage, including his overtime, was $699.45, and his weekly wage after his return to work on August 13, 1986 was $564 because of his inability to work overtime due to the pain caused by his work-related injuries. The referee then correctly calculated two-thirds of that difference (a loss of $135.45) and awarded partial disability benefits in the amount of $90.30 per week.

Although arguing on appeal the limitation of Section 306(b), nowhere did Employer attempt to demonstrate either by evidence or argument, that the average weekly wage of Claimant's fellow employees *at the time of the injury* on February 12, 1986 was less than Claimant's current wages and benefits combined. Moreover, under Section 306(b) such "fellow employees" would have had to be "in employment *similar* to that in which the [Claimant] was engaged at the time of the injury," (emphasis added), meaning, engaged in similar employment with similar earnings due to overtime. As Judge Barbieri points out in *Visintin*, if a claimant on piece-work at the time of the injury outproduces all other similarly employed fellow employees so that their earnings are completely out of line with the then earnings of the injured employee, they could hardly be considered "similar." The benefits of a partially disabled employee should in no way be curtailed by less productive or less ambitious fellow employees after the injury, any more than they should operate to reduce his wages prior to his injury.

■ Employer next argues that the award of partial disability benefits is contrary to our decision in *Johnson v. Workmen's Compensation Appeal Board*, 36 Pa.Commonwealth Ct. 527, 388 A.2d 767 (1978), arguing that Claimant is not permitted to collect benefits because his hourly wage has increased since the time of his injury. We do not believe that *Johnson* has any applicability to the present facts. There, the injured employee was a full-time teacher who also had a part-time teaching job in the evening. She was injured at her full-time job. While she was able to continue teaching at the full-time job, she could no longer do her part-time job because of her injury. She sought partial disability benefits because of the loss of her second job. We held that she was not entitled to benefits because she had obtained a raise in her primary job and she was making more in that job alone than she had been making in both jobs prior to her injury. In the present case, there is no question that Claimant's present earnings, even with his

hourly raise, do not equal his pre-injury average weekly wage. For that reason alone, *Johnson* is distinguishable.

Because Employer has failed to meet its burden of proving that Claimant's wages and partial disability benefits would exceed the average weekly wages of his fellow employees in similar employment, we affirm the Board.

## ORDER

NOW, January 30, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.