**Richard WEBER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SHENANGO, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.
Decided March 25, 1999.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Toni J. Minner, Pittsburgh, for respondent.

Before DOYLE, J., LEADBETTER, J., and RODGERS, Senior Judge.

LEADBETTER, Judge.

Richard Weber (claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) which reversed the decision of the Workers' Compensation Judge (WCJ) granting claimant's reinstatement and penalty petitions. After review, we reverse in part and affirm in part.

Claimant sustained a work-related injury to both hands (carpel tunnel syndrome) in March 1987, while working for Shenango, Incorporated in a position which involved the use of vibrating tools. As a result of his injury, claimant was unable to work and received total disability benefits pursuant to a notice of compensation payable for the period March 30, 1987, through early August 1987. On August 3, 1987, claimant was released to return to work subject to a medical restriction against the use of any vibrating tools.

Claimant returned to work with no loss of earnings on August 3, 1987, and on August 11, he signed a final receipt. Upon his return, he took a position in the same department (the RAM department) where he had worked at the time of his injury, although in a job which did not require the use of vibrating tools. After working for a time in the RAM department where he had 13 years of seniority, claimant bid on and took a job in another department, which resulted in a loss of seniority and payment of wages at less than his pre-injury rate. Thereafter, claimant filed a petition to reinstate compensation benefits, which he later amended to a petition to set aside final receipt.

On August 27, 1992, following litigation, a referee set aside the final receipt and granted claimant partial disability benefits from August 3, 1987, through the date of the decision and continuing into the future. In setting aside the final receipt and granting claimant partial disability benefits, the referee made the following findings of fact:

9. Defendant's position is that there were jobs within the RAM department that were non-disabling and did not involve the use of vibrating tools which claimant could have bid on. Instead, he bid out of the department, and, in fact, he bid on non-incentive jobs which denied him opportunity to earn the incentives which would have kept his wages at a level equal to what he had been earning prior to being injured.

10. This Referee finds that as a result of suffering a work-related injury on March 27, 1987, the claimant did have a partial residual disability at the time he returned to work. The parties agreed that the claimant could not return to his former occupation involving the use of vibrating tools and that the only issues [sic] to be decided is what amount, if any, is due to the claimant for past partial disability. (N.T. 1/15/91 at 3).

*Weber v. Shenango, Inc.,* Referee's decision of August 27, 1992, slip. op. at 3 (Petitioner's brief at A–4). Employer appealed the referee's decision[1] and the

---

1. In its notice of appeal to the Board, employer averred, *inter alia,* that: (1) the referee erred in failing to make a finding as to whether claimant's loss of earnings upon his return to work was attributable to the work-related injury or to the fact that claimant had voluntarily bid himself outside of the department where he had acquired 13 years of seniority; (2) the referee erred in failing to find that employer had work available for the claimant within his medical restrictions that would have paid claimant wages equal to or in excess of the wages he was earning in his pre-injury job; and (3) claimant's loss of earning power was due to his action in voluntarily bidding outside of the department in which he had acquired seniority rather than as a result of his work-related injury. Appeal from Referee's Decision at 1–2 (Respondent's brief, Appendix A).

Board affirmed.[2]

On employer's subsequent appeal to this court, employer argued that claimant was not entitled to an award of partial disability benefits because his loss of earnings was not attributable to the work-related injury, but. due to his voluntary action of bidding outside of his department where he had no seniority. Citing *Kachinski v. Workmen's Compensation Appeal Board*, 516 Pa. 240, 532 A.2d 374 (1987),[3] this court reversed the Board's affirmance of the grant of partial disability benefits. Specifically, we concluded that claimant was not entitled to benefits because employer had provided claimant with a job within his physical limitations at a rate of pay equal to or greater than his pre-injury rate and that the subsequent loss of earnings was due to claimant's voluntary decision to move out of the department where he had seniority rights, and not the result of the physical limitations from his previous work injury. *Shenango, Inc. v. Workmen's Compensation Appeal Bd. (Weber)*, 166 Pa.Cmwlth. 348, 646 A.2d 669, 671–72 (1994).

On March 13, 1993, before this court's decision and while claimant was still receiving partial disability benefits, claimant was laid off due to the closure of employer's plant. Following the plant closure, employer voluntarily increased claimant's benefits to that of total disability. However, following this court's August 1994 opinion reversing the grant of partial disability benefits, employer terminated claimant's total disability benefits. Thereafter, in September and December of 1994, claimant filed the two petitions currently under review, namely the penalty and reinstatement petitions. In the penalty petition, claimant averred that this court's decision reversing the grant of partial disability benefits did not affect his entitlement to total disability benefits upon the plant's closure and, therefore, employer ceased payment of benefits in violation of the Workers' Compensation Act (Act).[4] In the reinstatement petition, claimant averred that his disability had recurred as of March 13, 1993, the date of the plant's closure. The petitions were consolidated and hearings before the WCJ followed.

After consideration of the evidence of record,[5] the WCJ granted both petitions and awarded claimant: (1) benefits beginning March 13, 1993, to the present and into the future, with a credit given to employer for benefits paid to claimant

**2.** As noted in the Board's opinion, employer argued that claimant's loss of wages upon his return to work was not a result of the physical limitations from his work injury, but rather a result of his voluntary relinquishment of his seniority in his pre-injury department. *Weber v. Shenango, Inc.*, No. A92–2420 (Decision of October 1, 1993), slip op. at 4 (Petitioner's brief at A–11).

**3.** In *Kachinski*, the Supreme Court set forth the conditions (such as availability of suitable employment within a claimant's restrictions) that an employer must demonstrate before terminating or modifying benefits.

**4.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

**5.** Claimant testified that he had not worked since the plant closed in March 1993, however, he had applied for several jobs. He further testified that at the time he was laid off, he was working for employer as a pattern maker beginner in the maintenance department. Lastly, claimant testified that he experiences weakness from his elbows down to his hands and has difficulty performing certain tasks such as opening jars. Claimant also offered the deposition testimony of his treating physician, Theodore Moran, M.D., who testified that upon claimant's return to work, he imposed the restriction that claimant should not use vibrating tools. Dr. Moran also testified that such was a permanent restriction. Finally, Dr. Moran noted that he examined claimant in December 1994, and claimant's exam was normal except for the noted weakness in his arms. Employer offered the deposition testimony of Rodger Ferguson, M.D., who, following an examination of claimant, concluded that claimant had fully recovered from his work injury and could return to work without any restrictions as to the use of vibrating tools. Employer also offered into evidence several job descriptions. The WCJ accepted both claimant's and Dr. Moran's testimony as credible and persuasive and rejected the testimony of Dr. Ferguson as unpersuasive.

from that date until benefits were discontinued in August 1994; (2) a penalty in the amount of 20% of benefits awarded; and (3) attorney's fees. Employer appealed and the Board reversed. In doing so, the Board concluded that claimant had failed to prove the elements necessary to set aside a final receipt, evidently believing that when this court reversed the grant of partial disability benefits to claimant in 1994, we also reversed the WCJ's decision to set aside the final receipt. The Board further opined that claimant was not entitled to a reinstatement of benefits due to the fact that his loss of earnings was due to the closure of the plant and not his work injury. The present appeal followed.

■ On appeal, claimant contends that the Board erred as a matter of law by evaluating his right to benefits as if the petition to set aside the final receipt were still in place. After review of our decision in *Shenango,* we agree that our reversal of the grant of partial disability benefits did *not* also act as a reversal of the referee's decision to set aside the final receipt. In order to set aside a final receipt, the claimant must demonstrate that he had not fully recovered from the work-related injury at the time the final receipt was signed. *General Dynamics, Land Systems Div. v. Workmen's Compensation Appeal Bd. (Blank),* 145 Pa.Cmwlth. 304, 603 A.2d 259, 260 (1992). A close reading of our decision reveals that the issue before the court in *Shenango* was whether claimant's loss of earnings was due to his work-related injury or his decision to move outside of the RAM department. In resolving that issue, we clearly noted that claimant had returned to work with restrictions. *Shenango,* 646 A.2d at 671 ("This is a situation in which the employer has returned the claimant to a job within his physical limita-

tions, i.e., no vibrating tools, at a rate equal to or greater than his pre-injury rate"). It is clear that this court did not reverse the referee's finding that claimant had returned to work following his injury with a residual disability.[6] Claimant's inability to return to his pre-injury job due to the medical restriction that he could not work with vibrating tools supports the grant of claimant's petition to set aside the final receipt. The practical effect of this court's 1994 decision was to place claimant in a suspension status because he had returned to work, albeit with restrictions, to a position in which he was earning wages equal to or greater than his pre-injury rate and his subsequent reduction in salary was unrelated to his work injury.[7]

■ With this in mind, we address claimant's argument that he is now entitled to benefits as a result of the plant closing. In general, a claimant seeking reinstatement of benefits following a suspension must demonstrate that: (1) through no fault of his own, the claimant's earning power is again adversely affected by the work-related injury; and (2) the disability which gave rise to the original claim continues. *Teledyne McKay v. Workmen's Compensation Appeal Bd. (Osmolinski),* 688 A.2d 259, 261 (Pa.Cmwlth. 1997). In meeting the first prong of this burden, we have held that when a claimant returns to work under a suspension with restrictions attributable to a work-related injury (that is, the claimant returns to a modified position rather than his time of injury position), is subsequently laid off and then petitions for the reinstatement of benefits, the claimant is entitled to the presumption that his loss of earning power is causally related to the continuing work injury. *Id.* at 262. Once the claimant

6. Moreover, after a review of the administrative decisions underlying *Shenango* as well as employer's appeal from the referee's decision (attached to employer's brief as Appendix A), it is clear that employer did not appeal the finding that claimant suffered a residual disability upon his return to work nor the setting aside of the final receipt.

7. Benefits are suspended when the claimant continues to suffer a residual physical impairment from a work-related injury, but is earning wages equal to or in excess of the wages earned in the pre-injury position. *Magulick v. Workers' Compensation Appeal Bd. (Bethlehem Steel Corp.),* 704 A.2d 176, 178 (Pa.Cmwlth. 1997).

System

establishes the causal connection between his loss of earnings and the original injury, either through the presumption or affirmative proof, the claimant is entitled to the reinstatement of benefits unless the employer provides available work within the claimant's restrictions or demonstrates that claimant's present loss of earnings is due to factors unrelated to the work-related injury. *Id.* Conversely, where the claimant returns to work under a suspension *without* restrictions, is laid off, and then petitions for reinstatement of benefits, this court has held that the claimant must affirmatively demonstrate that it is the work-related injury which is causing the present loss of earnings. *Id. Accord Trumbull v. Workmen's Compensation Appeal Bd. (Helen Mining Co.)*, 683 A.2d 342, 345 (Pa.Cmwlth.1996). *See also Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990); Section 413 of the Act, 77 P.S. § 772. The obvious corollary of these holdings is that although the direct cause of the claimant's loss of earning power in these cases–i.e., a plant closing or layoff–is unrelated to claimant's injuries, that in and of itself does not preclude benefits under *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995).

■ Applying these standards, it is clear that the WCJ properly granted claimant's petition for reinstatement. Here, it is undisputed that claimant returned to work with restrictions and claimant offered medical evidence, which was credited by the WCJ, demonstrating that his restrictions and medical complaints continued to exist in March 1993 when the plant closed. Moreover, employer failed to demonstrate that available work existed within the claimant's restrictions [8] or that claimant's loss of earnings was due to factors (other than the plant closing) unrelated to the work injury. Accordingly, we conclude that the Board erred in reversing the WCJ's grant of benefits to claimant as a result of the plant closure.

■ In reversing the Board's order, however, we do not reinstate the WCJ's award in total. In granting claimant benefits beginning March 13, 1993, the WCJ allowed employer a credit for benefits it had paid to claimant from that date forward until benefits were discontinued in August 1994. However, at oral argument, it was stipulated that employer was granted a refund from the supersedeas fund for benefits paid to claimant from August 11, 1987, through August 1, 1994, and thus is not entitled to further credit for his payments. In addition, we do not reinstate the WCJ's award of penalties and attorney's fees. At argument, counsel for claimant stated to the court that claimant was no longer seeking penalties. Finally, the WCJ concluded that employer had presented a reasonable contest. This finding was supported by substantial evidence, so his award of counsel fees was erroneous. *See* Section 440 of the Act, 77 P.S. § 996.

### ORDER

AND NOW, this 25th day of March, 1999, the order of the Workers' Compensation Appeal Board in the above captioned matter is reversed in part and affirmed in part. Compensation benefits are reinstated as of March 13, 1993. The award of a credit to Shenango, Incorporated is reversed and the denial of penalties and counsel fees is affirmed.

---

**8.** Although job descriptions were admitted into the record, no testimony was offered to establish that these jobs were made available to claimant.