742 A.2d 649

**VISTA INTERNATIONAL HOTEL, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (DANIELS), Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1998.

Decided Dec. 23, 1999.

Reargument Denied Feb. 25, 2000.

James M. Poerio, Pittsburgh, for Vista Intern. Hotel.

David M. McCloskey, Pittsburgh, for Daniels.

No appearance for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

We allowed appeal to examine two issues: (1) whether the Workers' Compensation Appeal Board properly granted a

rehearing to allow a claimant to defend a termination petition, although the record was closed after the claimant previously failed to appear; and, (2) whether and under what circumstances workers' compensation benefits may be terminated based upon a claimant's involuntary discharge from employment.

Appellee, Mary Daniels ("Claimant"), was employed in the housekeeping department of Appellant, Vista International Hotel ("Employer"), as a bathroom attendant. On February 21, 1989, she was struck on the head by a light fixture and suffered injury. She subsequently received workers' compensation benefits pursuant to a notice of compensation payable. In November of that year, however, Employer filed a petition seeking a termination or suspension of benefits, alleging that Claimant had returned to work at wages equal to or greater than her pre-injury wages, suffering no residual disability. The workmen's compensation referee scheduled a hearing for January 4, 1990, and notice was sent to Claimant's last-known address.[1] Although the notice was not returned by the Post Office, Claimant failed to appear at the hearing. Employer advised the WCJ that Claimant no longer resided at the listed address and provided Claimant's updated address. The WCJ scheduled a second hearing for February 1, 1990, and notice was sent to the new address. Again, the notice was not returned and Claimant failed to appear, nor did she contact the WCJ personally or through a representative. The WCJ heard Employer's evidence and subsequently entered a decision and order terminating Claimant's benefits.

Claimant appealed, alleging that she received only one

---

**1.** The Act of July 2, 1993, P.L. 190, commonly known as "Act 44," amended the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, renaming it the Workers' Compensation Act (as amended, 77 P.S. §§ 1–1041.4)(the "Act"), and changing the title of workmen's compensation referee to workers' compensation judge, among other amendments. Since these changes are not material for purposes of this appeal, references to the Act made in this opinion are to the current version. For the sake of convenience, and since the present referee became a workers' compensation judge during the pendency of the proceedings, all future references are to "the WCJ."

notice but misread the hearing date.[2]  On May 8, 1991, the Workmen's Compensation Appeal Board (the "Board") issued an order remanding the matter to the WCJ to permit Claimant to present her defenses to the termination petition.  Although the Board issued an accompanying opinion, it did not state the basis for its decision, other than by way of general reference to its broad powers to grant a rehearing.

Meanwhile, on March 11, 1991, Claimant filed a new claim petition, alleging that, on February 5, 1991, during the course of her job with Employer, she was struck on the head by a bucket and suffered a second injury.  Employer filed a timely answer denying the material allegations of the petition.  Claimant also filed a petition seeking penalties against Employer for unilaterally refusing to pay medical expenses arising from the 1989 injury which were incurred after the grant of Employer's termination petition.  Employer responded by filing a petition for review, challenging the reasonableness of further treatment or testing in relation to the 1989 work injury.  The new claim petition, the miscellaneous petitions relating to the 1989 injury and the remanded termination petition were consolidated before the WCJ.

On March 25, 1992, prior to the conclusion of the hearings, Claimant injured her back during the course of her employment.  Claimant was transported to the hospital, where she was examined and released, but she failed to report to work as scheduled for the next two days or to report the reason for her absence.  Employer terminated her employment, concluding, in accordance with the employee handbook, that Claimant had voluntarily resigned by failing to report to work or call in sick for two consecutive days.  Claimant asserted that she did not believe she was required to report her absence, as Employer was aware that she had been injured.  Claimant re-

2.  Specifically, Claimant asserted:

I was unaware of the nature of the proceedings against me because I did not receive a copy of the employer's petition for termination or suspension.  I received notice of only one hearing, but I misread the date which resulted in my not appearing.  In the interests of fairness, I respectfully request that the case be remanded to the referee in order that I may contest the employer's petition.

ceived unemployment compensation benefits, the award of which was affirmed by the Unemployment Compensation Board of Review. In the unemployment compensation proceeding, the referee expressly found that Claimant's discharge was not a result of willful misconduct and that Claimant had not voluntarily resigned.

On remand, the WCJ found that Employer failed to meet its burden of establishing that all disability arising from the 1989 work injury had ceased and denied both the termination petition and Employer's petition for review of the reasonableness of medical expenses. The WCJ also denied Claimant's petition for penalties, concluding that Employer's contest was reasonable and its failure to pay medical expenses after the original termination order was not a violation of the Act.

In addition, the WCJ found that Claimant met her burden of proving that she suffered a compensable work-related injury on February 5, 1991, from which she continues to suffer a residual disability. Thus, the WCJ awarded total disability benefits for the period from February 5, 1991, until July 15, 1991, when Claimant returned to modified duty work, and partial disability benefits thereafter. The WCJ awarded total disability benefits beginning again as of April 2, 1992, the date Claimant's employment was terminated, on the ground that Claimant established a residual disability and the unavailability of suitable employment.

The Board affirmed, rejecting Employer's contention that Claimant was discharged for cause. It recognized that where a claimant's own misconduct after returning to work causes a loss of earnings, the employer is not required to resume payment of total disability benefits. The Board, however, cited the Commonwealth Court's decision in *Hertz Penske Truck Leasing Co. v. Workmen's Compensation Appeal Bd. (Bowers)*, 168 Pa.Cmwlth. 657, 651 A.2d 1145 (1994), *rev'd*, 546 Pa. 257, 684 A.2d 547 (1996),[3] for the proposition that "a reason which arguably is not the claimant's fault is clearly not a viable reason for a discharge."

3. The Board's decision pre-dated this Court's opinion in *Hertz–Penske*.

The Commonwealth Court affirmed. *See Vista Int'l Hotel v. Workmen's Compensation Appeal Bd. (Daniels)*, 683 A.2d 349 (Pa.Cmwlth.1996). Relying upon *Joseph v. Workmen's Compensation Appeal Bd. (Delphi Co.)*, 522 Pa. 154, 560 A.2d 755 (1989), it held that the Board acted within its authority in remanding the case following the initial order terminating benefits. Regarding the termination of Claimant's benefits as of the date of her discharge from employment, the court cited its decision in *Hertz Penske* and stated:

> It is now clear that "[a]n employer carries a heavy burden of proof where it seeks to terminate a claimant's benefits, and a claimant who has been separated from employment effectively enjoys a presumption that such separation occurred through no fault of his own **even when the issue is suspension.**" For this reason, "in order to prevail [on a petition for suspension], Employer has an affirmative burden to prove either that Claimant's termination was voluntary, or that he was dismissed for good cause."

> Accordingly, it is clear that to prevail on its termination/suspension petition Employer had to establish that Employer had good cause to terminate Claimant and, thus, Claimant's loss of earnings was due to her own willful misconduct. Accordingly, the WCJ did not err in so placing the burden on Employer.

*Vista Int'l*, 683 A.2d at 352–53 (citations omitted; emphasis in original).

In this appeal, Employer first contends that the Board exceeded its authority under Sections 423, 425 and 426 of the Act, 77 P.S. §§ 853, 856 and 871,[4] by granting a rehearing

4. Section 423, 77 P.S. § 853, provides:

> Any party in interest may, within twenty days after notice of a workers' compensation judge's adjudication shall have been served upon him, take appeal to the board on the ground: (1) that the adjudication is not in conformity with the terms of this act, or that the workers' compensation judge committed an error of law; (2) that the findings of fact and adjudication was unwarranted by sufficient, competent evidence or was procured by fraud, coercion, or other improper conduct of any party in interest. . . .

Section 425, 77 P.S. § 856, provides:

after the WCJ terminated Claimant's benefits relating to the 1989 injury. Specifically, Employer contends that: Section 423 is inapplicable, since Claimant does not allege that any errors of law were committed or that findings of fact were unsupported by competent evidence; Section 425 of the Act is also inapposite, as Claimant never alleged that the WCJ's decision was capricious or the result of fraud, coercion, or other improper conduct; and Section 426 of the Act likewise fails to serve as authority for the Board's decision, since the Board did not take any additional evidence or act on the matter in any way prior to its grant of a rehearing.

■ As the Commonwealth Court correctly recognized, however, this Court's decisions in *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988), and *Joseph*, 522 Pa. at 154, 560 A.2d at 755, establish that the Board's authority to grant a rehearing is not strictly limited according to these enumerated statutory provisions. Rather, the Court has held that the Board has the ability to grant a rehearing in appropriate circumstances where the interests of justice require. *See Cudo*, 517 Pa. at 557, 559, 539 A.2d at 794–95; *Joseph*, 522 Pa. at 158–59, 560 A.2d at 756–57. Nevertheless, the Board's power is not limitless but must be exercised in a manner that is generally consistent with the policies and provisions of the Act. Additionally, in order to allow for appropriate review, the Board may not rest a decision to grant a rehearing solely upon the fact that it has broad powers to do so, but instead, must specify the basis for its determination.

> If on appeal it appears that the [workers' compensation judge's] award or disallowance of compensation was capricious or caused by fraud, coercion, or other improper conduct by any party in interest, the board may, grant a hearing de novo before the board, or one or more of its members or remand the case for rehearing to any [workers' compensation judge]....
>
> Section 426, 77 P.S. § 871, provides:
>
> The board, upon petition of any party and upon cause shown, may grant a rehearing of any petition upon which the board has made an award or disallowance of compensation or other order or ruling, or upon which the board has sustained or reversed any action of a [workers' compensation judge]....

With respect to the policies and provisions of the Act, both the Board and the Commonwealth Court overlooked Section 416, which provides, in relevant part, that:

[i]f a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.

77 P.S. § 821. Thus, while the Act is remedial in nature and is to be liberally construed to effectuate its humanitarian objectives, see Lehigh County v. Workmen's Compensation Appeal Bd. (Wolfe), 539 Pa. 322, 327, 652 A.2d 797, 799 (1995), the General Assembly has focused the inquiry to be made when a party fails to appear at hearing upon the adequacy of the party's excuse, if any. Therefore, in absence of sufficient justification on the part of Claimant for her failure to appear at the hearing of February 1, 1990, the WCJ appropriately adjudicated Employer's termination petition on the basis of the petition and the record developed by Employer. The Board, however, directed that the closed record be opened so that Claimant might present her defense to termination without assessing the adequacy of Claimant's proffered excuse. Since both the credibility and legal sufficiency of the offered excuse were contested by Employer, it was error for the Board to grant rehearing other than for the purpose of considering, in the first instance, the veracity and adequacy of Claimant's proffered excuse for her failure to appear at the scheduled hearings.[5]

---

5. We recognize that our review is limited according to the standards set forth in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. In this instance, we find that the Board's decision to grant a rehearing fails to meet the "in accordance with law" facet of our review in that it is unsupported by competent factual findings and contains no basis for determining whether it is other than arbitrary and capricious. See generally Fraternal Order of Police v. Pennsylvania Labor Relations Bd., 557 Pa. 586, 591–93, 735 A.2d 96, 99 (1999)(elaborating upon the "in accordance with law" standard of review). Additionally, since the decision was apparently not made within the proper framework for the exercise of discretion in the circumstances presented (as established by Section 416 of the Act), it cannot be insulated as a proper exercise of the Board's discretion.

The second question presented pertains to whether Claimant's benefits related to her February 5, 1991, injury must be limited to those which accrued prior to March of 1992, the date she was discharged for failing to comply with Employer's call-in policy.[6]

In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury rendering the claimant incapable of performing the time-of-injury job. If the employer asserts that the claimant can perform some work within restrictions, the employer bears the burden of proving that suitable employment is available. *See Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 244–45, 532 A.2d 374, 376 (1987)(citing *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 458, 246 A.2d 668, 674 (1968));[7] *see also Reinforced Molding Corp. v. Workers' Compensation Appeal Bd. (Haney)*, 717 A.2d 1096, 1101 (Pa.Cmwlth.1998), *appeal denied,* — Pa. ——, — A.2d ——, 1999 WL 62221 (Feb. 11, 1999).

Here, the WCJ specifically found that Claimant satisfied her initial burden by proving that she "suffered a disabling compensable work-related injury on February 5, 1991, from which she continues to suffer from a residual disability." The WCJ thus awarded total disability benefits for the initial period following her injury and partial disability benefits from the

6. It merits emphasis that the injury relevant to Employer's second issue is Claimant's 1991 injury. Employer's termination petition, discussed above, pertained only to Claimant's 1989 injury. The significance of Claimant's 1992 back injury is limited to its being a part of the chain of events resulting in Claimant's discharge from her employment; there is no separate claim petition relating to that injury at issue in this appeal.

7. Although *Kachinski* was a proceeding on an employer's petition to modify, terminate or suspend, *Barrett*, like this case, was a proceeding on a claim petition. The Court in *Barrett* explained that the burden of proving job availability was properly allocated to the employer because the allocation establishes a clear rule in all cases in which the claimant can perform some work and encourages agreements in cases in which the claimant has suffered a temporary disability. *Barrett*, 431 Pa. at 456–57, 246 A.2d at 674; *see also Petrone v. Moffat Coal Co.*, 427 Pa. 5, 12, 233 A.2d 891, 895 (1967)(stating that "[i]f light duty work is available, it is easier for the defendant to prove its existence than for the claimant to prove its non-existence").

time Claimant returned to work in light duty status through the date of her discharge.[8] In addition, the WCJ awarded total disability benefits for the period following the discharge, based upon the continuing partial disability and the unavailability of suitable employment. *See generally Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries),* 536 Pa. 490, 498, 640 A.2d 386, 390 (1994)(citing *Cerny v. Schrader & Seyfried,* 463 Pa. 20, 25, 342 A.2d 384, 387 (1975)); *Petrone,* 427 Pa. at 8–12, 233 A.2d at 893–95.

In *Howze v. Workers' Compensation Appeal Bd. (General Elec. Co.),* 714 A.2d 1140 (Pa.Cmwlth.1998), the Commonwealth Court considered the appropriateness of an award of partial disability benefits following a claimant's involuntary discharge. The claimant sustained a work-related injury to his lower back and received benefits pursuant to a notice of compensation payable. He subsequently returned to light duty work at a wage loss and received partial disability benefits, until the employer subsequently discharged him for misconduct. The employer then filed a termination petition, based in part upon the allegation that the claimant's loss of earnings occurred for reasons unrelated to his work injury. The workers' compensation judge suspended benefits, and the Workers' Compensation Appeal Board affirmed. The Commonwealth Court, however, reversed, reasoning as follows:

Disability is synonymous with loss of earning power. Indeed, "benefits for partial disability are based on the difference between pre-injury earnings and post-injury *earning power . . . .*"

A suspension of benefits is only appropriate where the employee's earning power is no longer affected by the work-related injury. Our supreme court has stated, "[s]ince the purpose of the Act is purely to compensate a claimant for his work-related injury, the dispositive element in the suspension analysis . . . is the status of the injury. Issues of misconduct or fault, if any, on the part of a claimant do not impact upon this determination."

8. These portions of the award are uncontested by Employer in this appeal.

> Because Claimant was receiving partial disability benefits at the time of his discharge, there is a presumption that his disability from the work injury continues. Employer failed to produce any evidence to prove that Claimant's *partial disability* was due to a factor unrelated to his work injury; instead, Employer produced evidence to establish only that Claimant's loss of the salary which he had been earning upon his return to light duty work was due to his misconduct. Therefore, consistent with the purpose of the Act—to remedy a loss in earning power due to a work-related injury—Claimant is entitled to continue to receive his partial disability benefits, calculated according to the wages he would have earned but for his misconduct.

*Howze*, 714 A.2d at 1142 (citations omitted; emphasis in original).

The analysis applied in *Howze* gives appropriate consideration to the initial cause of the loss of earnings capacity, namely, the work-related injury, rather than shifting the entire focus of the inquiry to an event, such as a subsequent termination, which interrupts the claimant's present income stream, but is not the sole cause of the continuing diminishment in ability to perform work. Moreover, it is consistent with the language of the Act, which defines partial disability benefits according to the loss of earnings power, 77 P.S. § 512, corresponds to the Act's remedial purpose, and has the effect of providing compensation for that portion of a claimant's loss in earnings capacity that the claimant cannot recover in the marketplace due to a continuing inability to perform full employment. *See generally Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown)*, 543 Pa. 484, 491–92, 672 A.2d 1319, 1322 (1996)(stating that "although [the claimant's] loss in earnings upon returning to a light-duty position is the result of economic conditions at [employer's] work place, she continues to be entitled to partial disability benefits as she has not fully recovered from her work injury, remains unable to resume her pre-injury position, and is not presently earning wages equal to or greater than her pre-injury average weekly wage").

█ Applying this analysis to the present case, in light of the WCJ's finding that Claimant continues to suffer from a residual disability, Claimant should, at a minimum, continue to receive such post-discharge benefits as are attributable to her partial disability.

As previously noted, however, the WCJ awarded Claimant total disability benefits for the period following her termination based upon her established partial disability and the unavailability of suitable employment. Employer contends, however, that Claimant's loss of earnings was a result of her failure to comply with Employer's policy regarding procedures for reporting absences from work and was not related to the work injury. Although it acknowledges the WCJ's conclusion that Claimant was not at fault in connection with her termination, Employer cites this Court's recent decision in *Hertz–Penske*, 546 Pa. at 257, 684 A.2d at 547, for the proposition that fault is not relevant in this context.

In *Hertz–Penske*, however, the claimant was injured but returned to his time-of-injury job without any loss of earnings; therefore, he was not at such time disabled for purposes of the Act. The claimant was subsequently terminated involuntarily, which the employer contended was based upon job performance considerations. Total disability benefits were subsequently provided pursuant to a notice of compensation payable, and the employer then filed a petition to terminate or suspend, based upon the contention that the claimant had fully recovered from his injury. Thus, the Court was confronted with the issue of what caused the entire loss in earnings capacity—the injury or the asserted performance-based discharge. Since the Court determined that a factual determination was necessary to answer this question, it remanded for the necessary findings. *See Hertz–Penske*, 546 Pa. at 261–62, 684 A.2d at 549–50. *Hertz–Penske* does not stand for the proposition, as Employer seems to suggest, that fault is never relevant in a workers' compensation proceeding. Rather, it holds that fault is not generally relevant to the initial assessment of whether the claimant's burden of establishing a loss of earnings capacity attributable to a work-related injury has

been satisfied.[9]  *See generally Eljer Indus. v. Workers' Compensation Appeal Bd. (Evans)*, 707 A.2d 564, 566 (Pa.Cmwlth. 1998) (distinguishing *Hertz–Penske* on the basis that the claimant in the case clearly maintained a partial loss of earnings power in the time period for which benefits were sought).

Here, however, Claimant's loss in earnings capacity attributable to her 1991 work-related injury is uncontested. Employer does not challenge the initial conferral of total disability benefits, or the award of partial disability through the date of Claimant's discharge. Rather, it contends that an employer may achieve a suspension of workers' compensation benefits at any time following the occurrence of a disability by merely terminating the employee, without any fault-related assessment.

Treating an involuntary termination in the manner advocated by Employer fails to take into account the fact that the

9. Employer also cites *Bortz v. Workmen's Compensation Appeal Bd. (Reznor Div. of FL Indus.)*, 546 Pa. 77, 683 A.2d 259 (1996), in which a partially-disabled claimant filed a petition seeking reinstatement of total disability benefits, claiming recurrence of the disability on the same day on which he was indefinitely suspended from his employment for alleged misconduct. Thus, the threshold issue in the case was "whether the claimant's injury is again affecting his ability to earn." *Bortz,* 546 Pa. at 82, 683 A.2d at 262. The Court held that an unemployment compensation referee's finding that the claimant worked to the best of his abilities and did not engage in misconduct was not dispositive of this inquiry; and therefore, it was error for the workers' compensation judge to accord collateral estoppel effect to such finding. *Id.* It is noteworthy, however, that the claimant's entitlement to continued partial disability benefits was not the issue presented, as the employer had not sought suspension of those benefits. It is also significant that the disposition that was affirmed on appellate review was a remand to the workers' compensation judge to permit the employer to submit proof regarding the claimant's asserted fault in connection with his discharge. Therefore, like *Hertz–Penske, Bortz* does not stand for the proposition that fault is never relevant in a workers' compensation proceeding.

The holding of *Hertz–Penske* that fault is not relevant to the initial determination of whether the claimant's loss of earnings capacity is due to a work-related injury is tempered, of course, by enactments and related decisions implicating competing public policy concerns, such as Section 301(a) of the Act, 77 P.S. § 431 (precluding compensation for intentionally self-inflicted injuries, as well as injuries caused by a violation of law on the part of the claimant).

claimant remains burdened with a loss of earnings capacity attending the disability and may not have available other suitable employment. Moreover, carried to its logical conclusion, the approach would require the suspension of benefits in a broad array of cases involving involuntary terminations that occur due to no fault of the claimant, for example, in circumstances involving plant closings. *But see, e.g., Weber v. Workers' Compensation Appeal Bd. (Shenango, Inc.),* 729 A.2d 1249, 1253 (Pa.Cmwlth.1999)(requiring reinstatement of benefits to a partially-disabled claimant following the closing of the employer's plant).

Where a claimant establishes that a work-related injury prevents a return to the time-of-injury job, a loss of earnings capacity is established. Once such a loss has been demonstrated, the claimant should generally be entitled to benefits, unless the employer can demonstrate that employment is available within the claimant's restrictions. Consistent with the purposes of the Act, as well as our decisional law and the decisions of the Commonwealth Court, as a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity. *See generally Weber,* 729 A.2d at 1252 (stating that "we have held that when a claimant returns to work under a suspension with restrictions attributable to a work-related injury (that is, the claimant returns to a modified position rather than his time of injury position), is subsequently laid off and then petitions for the reinstatement of benefits, the claimant is entitled to the presumption that his loss of earning power is causally related to the continuing work injury"). *Cf. Inglis House v. Workmen's Compensation Appeal Bd. (Reedy),* 535 Pa. 135, 141–42, 634 A.2d 592, 595–96 (1993)(analyzing an employee's *voluntary* termination in terms of loss of earnings capacity in a case in which the claimant "had engaged in full time employment for six months without pain, and had quit without good cause").[10]

10. Employer makes the argument that Claimant's discharge in this case, like the termination in *Inglis House,* was voluntary; however, the

In addition to requiring the factfinder to consider the impact of the work-related injury as part of the benefits assessment, this approach has the advantage of also permitting consideration of the claimant's good or bad faith in connection with the termination, since fault-based considerations traditionally have been deemed relevant in determining whether the employer has met its burden of establishing job availability. *See, e.g., Kachinski*, 516 Pa. at 251–52, 532 A.2d at 379–80 (noting that "[o]bviously the viability of this system [of determining job availability] depends on the good faith of the participants").[11] Thus, under this approach, a partially

WCJ made the specific finding that Claimant "did not voluntarily resign from this position." Although Employer criticizes the WCJ's decision for its reference to findings rendered in connection with Claimant's receipt of unemployment compensation benefits, the WCJ merely referred to the unemployment compensation decision as supportive of her decision, since she offered sufficient findings independent of (but parallel to) that decision in support of her legal conclusions. *Cf. Bortz*, 546 Pa. at 81–82, 683 A.2d at 261–62 (disapproving decision of a workmen's compensation judge giving full collateral estoppel effect to an unemployment compensation referee in respects to a loss of earnings capacity issue in the workmen's compensation case).

11. While this is a proceeding on a claim petition, as opposed to one on a petition to suspend, terminate or modify, as previously noted, the initial burden of proof associated with job availability is generally allocated to the employer in any context once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant. *See supra* note 7 and accompanying text. Because, unfortunately, some claims review proceedings are protracted, the status of both disability and earnings may change for a variety of reasons prior to the rendering of a decision. Workers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer. *See generally Connor v. Workmen's Compensation Appeal Bd. (Super Sucker, Inc.)*, 155 Pa.Cmwlth. 102, 105, 624 A.2d 757, 758 (1993)(stating that, in proceedings on a claim petition, "[i]f the referee feels the evidence supports a finding of disability only for a closed period, he is free to make such a finding"), *appeal denied*, 535 Pa. 676, 636 A.2d 635 (1993). Thus, in assessing the relevant burdens in a claim proceeding, workers' compensation judges must apprehend the stage to which the proceedings have advanced. Of particular relevance here, where the claimant has established that a work-related injury is the cause of a loss in earnings capacity (or remains so) during the time period in issue, the employer will generally be charged with the initial burden of establishing job availability for that time period. The decision in *Inglis House* is not to the contrary, since the Court

disabled employee who, by act of bad faith, forfeits his employment would not be eligible for total disability benefits, as suitable employment was in fact available but for the employee's own wrongful conduct. Conversely, a partially disabled employee who acts in good faith to undertake work with restrictions would not be deprived of benefits that he plainly would have received had no light duty employment been offered merely because the employer subsequently elects to terminate such employment.

In summary, we hold that a claimant who has established a partial disability due to a work-related injury should generally continue to receive partial disability benefits by virtue of his loss in earnings capacity, even though subsequently discharged from employment, because the loss in earnings capacity remains extant. Whether the same claimant may receive total disability benefits depends upon whether the employer can demonstrate that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of the discharge to the claimant, such as claimant's lack of good faith. *Cf. Kachinski*, 516 Pa. at 251–52, 532 A.2d at 379–80.[12]

merely held that, by virtue of the claimant's voluntary decision to abandon the employment, she had not advanced beyond the point of establishing a loss in earnings power attributable to a work-related injury. *See Inglis House*, 535 Pa. at 142, 634 A.2d at 596. In the present case, Claimant's continuing disability is uncontested in this appeal; Employer seeks a *suspension* of benefits. Therefore, a *Kachinski*-type analysis is directly apposite.

The employer's burden of proof has been modified, in part, by the Act of June 24, 1996, P.L. 350, No. 5 § 4 (codified at 77 P.S. § 511.2)("Act 57"), which would appear to permit an employer to establish job availability through "expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." 77 P.S. § 512(2). The changes effected by Act 57 apply only to injuries that were suffered on or after the effective date of the Act. *See* Act of June 24, 1996, P.L. 350, No. 57 § 32.1(a).

12. Other jurisdictions incorporate principles into their workers' compensation jurisprudence to ensure that a disabled claimant acting in good faith is not deprived of benefits by the mere fact of his discharge from work. *See generally Potomac Edison Co. v. Cash*, 18 Va.App. 629, 446 S.E.2d 155, 157 (1994)(collecting cases); *Boryca v. Marvin Lumber*

In this case, Claimant must continue to receive post-discharge partial disability benefits, because she retains a residual disability resulting from her work-related injury that impacts upon her ability to work. Unless and until Employer establishes the availability of suitable employment, that such employment is available but for Claimant's lack of good faith, or a change in Claimant's medical condition, Claimant is entitled to total disability benefits for the period subsequent to her discharge. In this regard, because the WCJ made the specific finding that Claimant was terminated as a result of no fault of her own, and Employer made no showing that other suitable employment was available to her, the award of total disability benefits should stand.

The decision of the Commonwealth Court is reversed insofar as it endorses the Board's grant of rehearing, but is affirmed in all other respects. The case is remanded for further proceedings as necessary to the recalculation of benefits in a manner consistent with this opinion.

Justice ZAPPALA files a concurring and dissenting opinion in which Chief Justice FLAHERTY and Justice CASTILLE join.

ZAPPALA, Justice, concurring and dissenting.

I agree with the majority's conclusion that the Board erred by granting rehearing on Employer's termination petition relating to the 1989 injury, without assessing the adequacy of Claimant's proffered excuse for failing to appear. I respect-

& Cedar, 487 N.W.2d 876, 879 (Minn.1992)(finding that a claimant discharged for misconduct was not thereby deprived of total disability compensation for which he would otherwise be eligible); State ex rel. Watts v. Schottenstein Stores Corp., 68 Ohio St.3d 118, 623 N.E.2d 1202, 1205 (1993)(noting that a claimant's discharge for cause does not automatically preclude wage loss benefits); Wendt v. North Dakota Workers Compensation Bureau, 467 N.W.2d 720, 728 (N.D.1991)(same); Cousins v. Georgia–Pacific Corp., 599 A.2d 73, 74 (Me.1991)(same); Gilmer v. Atlanta Housing Auth., 170 Ga.App. 326, 316 S.E.2d 535, 536 (1984)(finding that a claimant discharged for cause was entitled to receive benefits for his loss of earnings capacity to the extent that he could prove that he was unable to work because of his prior compensable injury).

fully disagree, however, that Claimant is entitled to total disability benefits for her 1991 injury, for the period subsequent to her discharge from employment. Any loss of earnings in this regard is attributable to Claimant's discharge from employment and is not a result of her work injury.

The majority's finding to the contrary is based on the fact that Employer failed to establish "the availability of suitable employment, that such employment is available but for Claimant's lack of good faith, or a change in medical condition." Op. at 659. Employer bore no such burden as the instant case involves a claim petition, rather than a petition to suspend or terminate benefits. Under these circumstances, Claimant is not entitled to a presumption of continued disability and bears the burden of establishing that her loss of earnings is attributable to the work injury.

Although the majority appears to recognize that this case involves a claim petition, it fails to appreciate the significance of this procedural status. The majority asserts that "Claimant's continuing disability is uncontested in this appeal; Employer seeks a *suspension* of benefits," op. at 658 n. 11 (emphasis supplied). Employer's argument concerning the suspension of benefits upon Claimant's discharge from employment, however, arose while defending Claimant's claim petition alleging the 1991 work-injury. Thus, Employer was not attempting to suspend benefits relating to the 1991 injury *as no benefits had yet been granted.*[1,2] This distinction is critical and renders the instant case distinguishable from *Howze v. Workers' Compensation Appeal Board,* 714 A.2d 1140 (Pa.Cmwlth.1998), upon which the majority relies, and more akin to *Somerset Welding & Steel v. Workers' Compen-*

[1] We cannot view the WCJ's finding of residual disability as creating a *presumption* of continued disability in this case because whether Claimant's loss of earnings are attributable to her work injury is the very subject of this appeal.

[2] Moreover, Employer asserts that "Commonwealth Court *erroneously* stated, 'Employer does not challenge the WCJ's finding that Claimant's work-related injuries of February 21, 1989, and February 5, 1991, continue.'" Appellant's Brief at 32–33 n. 2.

*sation Appeal Board,* 168 Pa.Cmwlth. 78, 650 A.2d 114 (1994), *alloc. denied,* 540 Pa. 652, 659 A.2d 990 (1995).

The issue in *Howze* was whether an employer is entitled to a suspension of benefits when a claimant, who is receiving partial disability benefits as a result of returning to light duty work at a wage loss, is discharged for willful misconduct. In holding that a suspension of benefits was improper, the Commonwealth Court reasoned that "[b]ecause Claimant was receiving partial disability benefits at the time of his discharge, there is a presumption that his disability from the work injury continues." *Id.* at 1142.

Unlike the claimant in *Howze,* Claimant was not receiving any disability benefits for his 1991 injury at the time of her discharge. Thus, she is not entitled to any presumption of continued disability. The *Howze* court recognized this very distinction when it stated:

> This presumption [that the disability from the work injury continues] is what makes Employer's reliance on *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee),* 168 Pa. Commw. 78, 650 A.2d 114, 119 (Pa.Cmwlth. 1994), *appeal denied,* 540 Pa. 652, 659 A.2d 990 (1995) misplaced. *Somerset Welding* involved a claim petition proceeding; thus, the claimant had the burden of proof and there was no presumption that the claimant had sustained any loss of earning power from a work-related injury.

714 A.2d at 1143 n. 7.

The facts of *Somerset Welding* are virtually identical to those in the instant case. There, the claimant incurred a work-related injury on March 26, 1991. On March 28, 1991, the claimant's employment was terminated as a result of his continual disregard of company policy concerning procedures for reporting off work. The claimant subsequently filed a claim petition and was awarded total disability benefits.[3] The Board affirmed.

**3.** At that time, the referee also terminated benefits effective February 7, 1992, because the claimant's medical experts could not unequivocally establish a continuing disability after that date.

On appeal to Commonwealth Court, the employer argued that the Board erred in affirming the referee's award of benefits because the claimant's loss of earnings after March 28, 1991, resulted from the claimant's justifiable discharge for disregarding company policy and was not the result of a work-related injury. The Commonwealth Court agreed and suspended the claimant's benefits as of the date of his discharge. It held that "[i]f a claimant commits misconduct after the injury and is properly discharged for that conduct, then he is precluded from receiving compensation for loss of earnings from the date of his termination." *Id.* at 119. The same is true in the instant case.

In relying on *Howze*, the majority makes much of the fact that Claimant continues to have residual effects of the work-injury. We have held, however, that suspension is the appropriate remedy when the loss of earnings is not attributable to the work injury, but effects of the work injury remain. *See Harle v. Workers' Compensation Appeal Board*, 540 Pa. 482, 658 A.2d 766 (1995) (suspension rather than termination of benefits appropriate when claimant continues to experience residual physical impairment from work injury, but incurs no loss of earnings therefrom). This allows for the possibility that if Claimant's earning power at some time in the future is affected by her residual impairment from the 1991 work injury, she may seek reinstatement of partial benefits by proving only that the injury giving rise to the original claim continues and that her earning power is once again adversely affected by the injury. *Id.*, citing, *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990).

Accordingly, I would hold that under the circumstances of this case, the Commonwealth Court erred in failing to suspend benefits as of the date Claimant was discharged from employment.

Chief Justice FLAHERTY and Justice CASTILLE join this Concurring and Dissenting Opinion.