George ZINK, Petitioner,

v.

WORKERS' COMPENSATION AP-PEAL BOARD (GRAPHIC PACK-AGING, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 4, 2003.

Decided July 10, 2003.

Jerome P. Foley, Bechtelsville, for petitioner.

G. Scott Paterno, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

George Zink petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying his claim petition. Zink essentially presents two questions for the Court's review: first, whether the Board erred in determining that he failed to prove the requisite element of abnormal working condition to support his mental/physical claim and second, whether the holding in *Metropolitan Edison Co. v. Workmen's Compensation Appeal Board,* 553 Pa. 177, 718 A.2d 759 (1998), is applicable to his case.

## I

Zink served in the Vietnam War and suffered injuries to his legs, right arm and back from a mortar attack during combat for which he continues to receive treatment. In 1974 he was diagnosed with anxiety neurosis, chronic with depressive features, related to his war experience. This diagnosis is now known as post-traumatic stress disorder (PTSD). Graphics Packaging, Inc. (Employer) hired Zink under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Pub.L. No. 93–508, 88 Stat. 1578 (1974), which amended Title 38 of the United States Code in order to promote the welfare of Vietnam era veterans in several ways, including the promotion of employment opportunities for these veterans.

In or about 1983 Zink began working for Employer as a maintenance mechanic, and he continued to work there for thirteen years. While in its employ, Zink voluntarily traded shifts with other employees so that he could steadily work the third shift. He is unable to sleep at night due to his PTSD. Working the third shift also allowed Zink to take his medications, which caused drowsiness, during the day so that he could function through the night shift and so that he could exercise his legs to keep them functional. His medicines included Darvon Com–65 for chronic pain, Xanax or Sertiline for nerves and Diklomane and Famotidine for ulcers. In September 1995 Employer adopted a rotating shift schedule, which required Zink to work one week of day shift, one week of second shift and one week of third shift. Upon working the rotating shifts, Zink was unable to get the sleep and rest that he required, which led to increased stress, a worsening of his nerves, ulcer flare-ups and an increase in his leg and low back pain. Zink and his treating physician, Joseph Sembrot, M.D., requested on several occasions that Employer excuse Zink from rotating shifts and allow him to continue to work the third shift only, but Employer refused each request. Zink continued to work rotating shifts and used vacation time to take days off to cope with his symptoms. He was unable to keep appointments at the Veterans Administration Hospital because Employer assessed points for missing work. On July 23, 1996, Zink informed his supervisor that he could no longer handle the stress of rotating shifts.

Zink filed his claim petition on August 7, 1996 seeking workers' compensation benefits as of July 24, 1996 for the aggravation of his preexisting physical and mental injuries. Employer denied the material averments of the petition. Dr. Sembrot, an internal medicine physician, managed Zink's medical care. He testified that it was medically necessary for Zink to work the third shift permanently to keep him in balance because PTSD prevents him from sleeping at night, that his abdominal pain had increased after he began to work rotating shifts, that his emotional disease exacerbated the pain in his legs and that his chronic pain syndrome and sleep disorder were exacerbated to the point where he could no longer continue to work. Dr. Stephen J. Teders, a psychologist, testified that it was important for Zink to maintain regular sleep and wake times and that any deviation would exacerbate his PTSD problems and diminish his ability to cope with pain. Dr. Dolores M. Sarno–Kristofits, another psychologist, diagnosed Zink with PTSD. She opined that the rotating shifts caused Zink's existing depression and feelings of anger and distrust to increase and that he could not work as of August 1996. The WCJ found that Zink's symptoms had decreased and that his condition had stabilized by January 1997.

Employer offered the deposition testimony of Abram M. Hostetter, M.D. and testimony from Stephen Seals and Stephen Castellan. Dr. Hostetter, a psychiatrist, performed an independent medical examination of Zink on March 14, 1997. He diagnosed Zink with mixed personality disorder rather than PTSD, and he testified that Zink's mental state was not aggravated by the rotating shift schedule. Mr. Seals, a human resources representative for Employer from June 1995 through January 1997, testified about implementation of the rotating shift schedule and stated that Employer ultimately exempted Zink's maintenance department from the shift requirement without objection from the union. He admitted that Employer did not accommodate Zink's request for permanent third shift work until August 1996 when he advised Zink via letter that he could be permanently assigned, but Zink failed to respond.

WCJ David R. Weyl was assigned to the claim upon remand of the matter after an initial decision dismissing Zink's claim. Based on the testimony of record, WCJ Weyl found the testimony of Zink and his medical witnesses to be credible. The WCJ found the testimony of Dr. Hostetter to be incredible as it completely contrasted with the testimony from Zink and his witnesses and it ignored the well-documented effects of Zink's war service to his country. The WCJ determined that the rotating shift schedule aggravated Zink's PTSD and left him temporarily totally disabled as of July 24, 1996. Although indicating that no one should take satisfaction in the result, the WCJ concluded that the aggravation of Zink's preexisting condition was not compensable under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626, pursuant to the holding in *Metropolitan Edison.* The Board affirmed, and it also concluded that Zink failed to prove the existence of an abnormal working condition.[1]

## II

Zink's first argument before the Court is that the Board erred when it failed to find that Zink's PTSD was aggravated by an abnormal working condition. He contends that because the WCJ found that Employer was aware of Zink's requirement to work only third shifts, forcing him to work rotating shifts created an abnormal working condition. Zink next argues that the holding in *Metropolitan Edison* is not controlling because the claimant in that case did not suffer from known preexisting physical and psychic conditions as did Zink when Employer hired him. Both issues will be addressed together.

In *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough),* 561 Pa. 462, 751 A.2d 168 (2000), the Pennsylvania Supreme Court held that the standard applicable to claims for benefits when

---

1. The Court's review of the Board's decision is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, which provides that the Court shall affirm unless it determines that the adjudication is in violation of the petitioner's constitutional rights, that it is not in accordance with law, that provisions relating to practice and procedure of Commonwealth agencies in Sections 501–508 of the Administrative Agency Law, 2 Pa. C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of Steaks),* 572 Pa. 380, 815 A.2d 620 (2003). As fact finder, the WCJ determines all issues of witness credibility, and the findings of fact are binding on the reviewing court when the findings are supported by substantial evidence in the record. *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough),* 561 Pa. 462, 751 A.2d 168 (2000).

a claimant asserts a psychic injury manifesting itself through physical and psychic symptoms is the same standard that the court enunciated in *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990): a claimant must prove by objective evidence that he or she has suffered from a psychic injury and that it is other than a subjective reaction to normal working conditions. The court recognized that "[p]sychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of the specific employment." *Id.*, 561 Pa. at 479, 751 A.2d at 177 (quoting *Wilson v. Workmen's Compensation Appeal Board (Aluminum Co. of America)*, 542 Pa. 614, 624, 669 A.2d 338, 343 (1996)).[2] *See Borough of Beaver v. Workers' Compensation Appeal Board (Rose)*, 810 A.2d 713 (Pa.Cmwlth.2002) (claimant with psychic injury has alternative burden of proof).

In *Martin* the Supreme Court held that an employee's subjective reactions to normal working conditions are not compensable under the Act. More precisely, in *Metropolitan Edison* the court stated the general principle that the requirement for an employee to work an eight-hour shift is a normal working condition and that it does not constitute an injury under the Act. In that case the claimant developed physical complaints after working a rotating shift schedule for over twenty years. The court concluded that based solely upon the scheduling of work, the claimant did not suffer a compensable injury inasmuch as the scheduling of his work hours rather than a condition of the employer's premises or of the claimant's duties caused his physical complaints, and it reversed and denied the claim. Two years later, the court acknowledged in *Davis* that the instructions it developed in *Martin* and other cases merely represented the court's attempt to ascertain legislative intent, *i.e.*, are benefits payable under the circumstances of a given case.

Given the circumstances presented in this case, the Court concludes that Zink has satisfied his burden to prove that he was subjected to abnormal working conditions and that his injuries are therefore compensable. The WCJ found that Zink presented evidence to establish that his preexisting conditions were exacerbated or aggravated due to working rotating shifts for eight months before he became totally disabled, unlike the claimant in *Metropolitan Edison.* Many other significant distinctions exist between the two cases. Contrary to the circumstances in *Metropolitan Edison*, Employer hired Zink under a federal law designed to promote employment of Vietnam War veterans with full knowledge of his preexisting condition. Employer knew that Zink worked the third shift for thirteen years to accommodate his condition, but it nevertheless required Zink to work rotating shifts despite written and oral communication from his treating physician that to do so would exacerbate Zink's condition.

Expressing extreme frustration, the WCJ wrote the following:

2. In *Davis* the claimant worked as a police officer for eleven years before his promotion to sergeant, a position that he held for twenty years. He served as chief of police for four months before he stopped work due to a psychic injury and related physical complaints. The claimant's psychiatrist related the conditions to the accumulation of work events that the claimant experienced from 1965 until 1991. The Court denied benefits because the claimant failed to prove that his complaints were caused by abnormal working conditions. The claimant's psychic injury developed over a thirty-one year career, and the claimant's witnesses testified that he performed normal functions required of any person in the claimant's position.

[T]he *Metropolitan Edison* holding creates a "gross distortion" under the facts of this case. Claimant is a Vietnam Veteran who served his county at great personal sacrifice. Notwithstanding his significant injuries, he found gainful employment with [Employer]. Indeed, a witness for [Employer] described claimant as a "role model" for other employees during his 13 year tenure with [Employer]. Yet [Employer] did not accommodate claimant in his hour of need....

WCJ Decision, at p. 11. In *Sell v. Workers' Compensation Appeal Board (LNP Eng'g)*, 565 Pa. 114, 771 A.2d 1246 (2001), the Supreme Court repeated that the Act is remedial in nature and that it must be liberally construed in order to effectuate its humanitarian purpose. *See also Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of Steaks)*, 572 Pa. 380, 815 A.2d 620 (2003) (quoting from prior case holding that Act has humanitarian objectives); *Ramich v. Workers' Compensation Appeal Board (Schatz Elec., Inc.)*, 564 Pa. 656, 770 A.2d 318 (2001) (Act provides quick and certain benefits to injured workers and is to be liberally construed to effectuate humanitarian purposes).

The WCJ found the testimony of Zink's providers to be competent and credible that his need to work the third shift was medically necessary and that Employer had specific knowledge of Zink's special needs and the actions he had taken to best accommodate those special needs. The Court concludes that those findings are amply supported by substantial evidence in the record. Because Zink presented credited evidence of abnormal working conditions in the context of his specific employment and because this case unquestionably is distinguishable from *Metropolitan Edison*, the Court concludes that the WCJ and the Board erred in determining that

Zink failed to prove a compensable injury under the Act. Moreover, to deny his claim would frustrate the humanitarian purposes of the Act.

Lastly, Zink presented competent and unequivocal testimony which established that he became temporarily totally disabled as of July 24, 1996. The medical witnesses, credited by the WCJ, clearly testified that in their professional opinions Zink's physical and psychic conditions were exacerbated or aggravated when Zink was compelled to work rotating shifts for eight months before he could no longer continue to function on his job. The witnesses' testimony fully satisfied the standard that applies when a reviewing court must determine the legal sufficiency of medical testimony. *See Lewis v. Workmen's Compensation Appeal Board*, 508 Pa. 360, 498 A.2d 800 (1985). Accordingly, as Zink has demonstrated a compensable injury under the Act, the Court reverses the order of the Board and remands this case for an appropriate award based on the WCJ's finding that Zink could return to work by January 1997 due to a stabilization of his condition.

### ORDER

AND NOW, this 10th day of July, 2003, the order of the Workers' Compensation Appeal Board is reversed, and this case is remanded for purposes consistent with the foregoing opinion.

Jurisdiction is relinquished.

DISSENTING OPINION by Judge LEAVITT.

Respectfully, I dissent. Claimant's service to his country, which came at great personal cost, commands the respect of this Court. However, as the WCJ correctly concluded, albeit ruefully, this service does not entitle him to an award of work-

ers' compensation benefits "no matter how just a result such an award would be." WCJ Decision at 10.

Claimant began to work for Employer in 1983.[1] In May of 1995, Employer and the United Paperworkers Union (Union) negotiated, at the Union's request, a rotating work schedule. Under the collective bargaining agreement, all employees, including Claimant, were scheduled to work in rotating shifts, irrespective of prior practice or personal preference. On June 7, 1996, Claimant filed a grievance over the rotating shift, and in July he was informed by Employer that it was negotiating with the Union on exempting certain classifications from the rotating schedule and that once those negotiations were concluded, Claimant would be assigned his preferred shift, *i.e.* the third shift. On July 23, 1996, Claimant, who was at the time working the third shift, left work early, informing his supervisor that he was too stressed to continue working. He never returned.

After Claimant's departure, Employer attempted to contact Claimant several times by telephone to inform him that he would be permanently assigned to the third shift, as Claimant requested. When these attempts failed, Employer, on August 21, 1996, sent Claimant a letter offering him a third shift permanent assignment. Claimant did not respond to this letter. On August 26, 1996, Employer sent a letter advising Claimant that it considered Claimant to have voluntarily separated from employment in light of his absence since July 23, 1996, and his failure to respond to Employer's earlier letter. Claimant did not respond.

In its response to Claimant's appeal, Employer questions whether Claimant is disabled as a factual matter in light of his testimony that even his treating physicians wanted him to remain on the job. Employer also notes that Claimant stated that he left his job because he has been in pain for 25 years as a result of his war injuries. These factual issues are not addressed because I believe the outcome of Claimant's appeal is determined by our Supreme Court's holding in *Metropolitan Edison Co. v. Workmen's Compensation Appeal Board (Werner)*, 553 Pa. 177, 718 A.2d 759 (1998).

In *Metropolitan Edison*, the claimant was an assistant load dispatcher who worked on rotating shifts, set on a six-week rotation. After 20 years, the claimant took a lower paying, day-shift position. He then filed a claim petition asserting that the cumulative stress of working on a rotating shift had rendered him partially disabled and unable to continue to perform the job of assistant load dispatcher.

The Supreme Court rejected the claim, holding that "[t]he current version of the statute ... does not define injury to include physical ailments that arise from normal working conditions such as eight-hour shifts." *Id.* at 187, 718 A.2d at 764. It held specifically that "normal working conditions, such as requiring an employee to work an eight-hour shift, do not constitute an injury under the Act." *Id.* Further, having to work a certain shift is not an injury "for purposes of the Act merely because an employee undergoes physical or psychic reactions to those conditions." *Id.* The Court warned against confusing cause with effect. The cause, or stimulus, of [claimant's] physical complaints is the scheduling of the hours that [claimant] worked. Neither the condition of

---

1. The majority notes that Claimant was hired under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Pub.L. No. 93–508, 88 Stat. 1578 (1974). This federal law required, *inter alia*, employers to re-hire Vietnam veterans at their pre-service position. The law has no discernable relevance to the relationship between Employer and Claimant.

Met–Ed's premises nor the job functions of [claimant's job] resulted in an injury to [claimant.]

*Id.*

This holding could not be clearer. Assignment to a particular shift cannot give rise to a compensable injury under the Act. I agree with the observation of the WCJ that there is no "air" in the *Metropolitan Edison* holding for a contrary result here.

Accordingly, I would affirm.

Judge LEADBETTER joins in this dissent.

