**MERCER LIME AND STONE COM-PANY and Old Republic Insurance Company, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (McGALLIS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 2, 2007.

Decided May 17, 2007.

Charles G. Brown, Pittsburgh, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY President Judge LEADBETTER.

Employer, Mercer Lime and Stone Company, petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the grant of claimant Kenneth McGallis' penalty petition. The issue on appeal is whether employer failed to pay claimant in a timely manner in violation of the Workers' Compensation Act (Act).[1] After review, we conclude that employer's payment was untimely and, therefore, affirm the imposition of the five-percent penalty.

The facts are relatively undisputed. By decision and order circulated on October 18, 2004, the Workers' Compensation Judge (WCJ) approved a compromise and release agreement between claimant, employer and employer's insurer, resolving

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

McGallis' claim petition, which pertained to work-related injuries sustained on April 30, 2002. The agreement provided for payment to claimant in the amount of $100,000.00, payment of attorney's fees to claimant's counsel in the amount of $25,000.00, and payment of litigation costs to claimant's counsel in the amount of $3,211.77. On November 5, 2004, employer sent claimant a check for the required amount; however, the check lacked an authorized signature and, therefore, was not negotiable.[2] Claimant's counsel received the unsigned check on November 8 and promptly returned it to employer's insurer. The insurance carrier received the claimant's check on November 10.

Thereafter, on November 18, 2004, claimant's penalty petition was mailed to the Department of Labor and Industry. Upon receiving his copy of the petition, employer's counsel directed the insurance carrier to issue claimant's replacement check. The original check issued to claimant was then signed and sent to claimant on November 22; claimant cashed the check the following day.

The penalty petition was litigated before the WCJ, during which claimant, employer's counsel and the claims adjustor testified. Notably, the claims adjuster characterized the lack of an authorized signature on the initial check as an "honest oversight," and indicated that he did not instruct anyone to send the check without a signature. The adjustor further testified that, following the WCJ's decision and order, the employer had requested a copy of claimant's letter of resignation. The adjustor then spoke with employer's counsel, Charles Brown, who indicated that a letter of resignation had not been signed but that he would contact claimant's counsel about the matter. According to the adjustor, Attorney Brown told him to hold onto the check in order to "speed up recovery of

the resignation letter." Hearing of April 14, 2005, Notes of Testimony (N.T.) at 18. The adjustor denied that the delay was intended to cause harm to claimant.

Attorney Brown also testified regarding the delay involved in providing claimant with a properly signed check. According to his testimony, following the WCJ's decision, Attorney Brown instructed the adjustor to issue the required checks. Thereafter, the insurance carrier requested a copy of claimant's letter of resignation. Attorney Brown initially thought one had been signed in connection with the compromise and release but then realized he had inadvertently neglected to have one prepared. Following several conversations with opposing counsel's office staff, Attorney Brown believed that claimant would sign the resignation letter. When he subsequently discovered that the first check had been returned, he instructed the adjustor to "hold off having the check signed and reissued to Mr. McGallis because [he] thought it would speed up the process of having Mr. McGallis sign the letter of resignation, which [he] was under the impression Mr. McGallis was going to voluntarily sign...." N.T. at 51. Attorney Brown further testified:

> I really believed that this was the way to handle the situation, because Employer was putting pressure on me to get this letter of resignation, and I thought this was a way to speed the process up. Had I known that Mr. McGallis was never going to sign the letter of resignation, I would have realized that there was nothing I could do about that. I'd have to deal with the employer and I would have instructed [the adjustor] to issue the checks right away.

*Id.* at 53.

Based upon the foregoing, the WCJ found that employer and insurer applied

---

**2.** Apparently, the checks issued to claimant's    counsel were properly signed.

economic pressure to claimant in order to procure a resignation letter and, therefore, the delay in sending the check was due to more than an innocent oversight. Specifically, the WCJ found as follows:

I credit [the adjustor's] testimony that it was a "honest oversight" that employer sent claimant the ... check with no signature.... Had insurer simply turned around and reissued the check with a signature and the check was not received until after 30 days following the circulation of the [WCJ's] decision, at most the claimant would be proving a de minimus [sic] violation of the [Act]. However, what converts employer and insurer's conduct from a de minimus [sic] violation to one with significance, even though the payment occurred 36 days after the circulation date of the decision and order, is that employer and insurer clearly attempted to use economic leverage by withholding the sending of the check in order to compel the claimant to sign a letter of resignation. There is no testimony that a letter of resignation was ever negotiated as part of the compromise and release agreement.

WCJ's decision and order (circulated July 19, 2005), at 13.

The WCJ concluded that employer had 30 days following his order to pay claimant and, therefore, payment was due by November 17. Consequently, the WCJ found that employer's payment, which claimant received on November 23, was six days late. Accordingly, the WCJ granted the penalty petition and imposed a $5,000.00 penalty (5% of claimant's benefit). The Board affirmed and the present appeal followed.

■ On appeal, employer contends that claimant failed to prove that employer's

payment was untimely in violation of the Act. According to employer, it paid claimant in a timely manner because the check was first issued approximately eighteen days after the WCJ's decision. Employer also suggests that its responsibility to issue the settlement proceeds and the time available to take that action did not begin until after the relevant appeal period (in this case twenty days) had passed. Therefore, since payment occurred on November 22, fifteen days after the appeal period expired on November 7, employer contends that its payment was timely under the Act. Finally, employer argues that, even if we were to conclude that employer had thirty days from the date of the WCJ's decision and order in which to pay claimant, the payment to claimant was only six days late, and three days of that delay could be attributed to the time involved in returning the original check to insurance carrier. Accordingly, employer argues that its payment was actually only three days late, rendering the penalty excessive.[3]

■ We begin by noting the statutory provisions relevant to the employer's obligation to timely pay compensation benefits. Section 428 of the Act provides, in relevant part, as follows:

Whenever the employer, who has accepted and complied with the provisions of section three hundred five [pertaining to insurance of payment of compensation by employer], shall be in default in compensation payments for thirty days or more, the employe or dependents entitled to compensation thereunder may file a certified copy of the agreement and the order of the department approving the same or of the award or order with the prothonotary of the court of common pleas of any county, and the prothonotary shall enter the entire bal-

---

3. Claimant failed to file an appellate brief within the allotted time and was subsequently

precluded from doing so by order of this court.

ance payable under the agreement, award or order to be payable to the employe or his dependents, as a judgment against the employer or insurer liable under such agreement or award.... Such judgment shall be a lien against property of the employer or insurer liable under such agreement or award and execution may issue thereon forthwith.

77 P.S. § 921. In addition, Section 430(a) of the Act provides that the "lien of any judgment entered upon any award shall not be divested by any appeal." 77 P.S. § 971(a). Moreover, pursuant to Section 430(b), any insurer who "refuses" to pay in accordance with any decision "without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in section 435." 77 P.S. § 971(b).[4] Section 435(d) provides, in turn, for the imposition of penalties for violations of the Act. 77 P.S. § 991(d). Employers and insurers "may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable"; however, that amount may be increased to fifty per centum where an unreasonable or excessive delay has occurred.[5] *Id.* at subsection (d)(i).

Until recently, it was generally held that an employer violated the Act if it failed to begin making payments within thirty days of the date the obligation to pay arose. *See generally Cunningham v. Workmen's Comp. Appeal Bd. (Inglis House)*, 156 Pa.

Cmwlth. 241, 627 A.2d 218 (1993), *overruled by Snizaski v. Workers' Comp. Appeal Bd. (Rox Coal Co.)*, 586 Pa. 146, 891 A.2d 1267 (2006).[6] Recently, however, in *Snizaski*, our Supreme Court examined the time frame available to an employer to pay a claimant benefits without risking imposition of a penalty. There, although the employer failed to pay benefits within thirty days of an award in *alleged* violation of Section 428, the employer had filed a timely request for supersedeas with the Board. In determining whether a penalty had been properly assessed, the Supreme Court reviewed the Act, the Board's regulations and existing appellate case law, opining in pertinent part as follows:

> Under the statute, the power to assess a penalty is dependent upon the party violating the Act or pertinent rules and regulations. 77 P.S. § 991(d). One way an employer may violate the Act, and become "subject to a penalty," is to [terminate, decrease, or refuse to make] a payment provided for in a compensation "decision," in the absence of a supersedeas being sought and actually granted. *Id.* § 971(b). Section 428 ... does not separately address or authorize penalties. Instead, that Section grants a claimant the right to secure a judgment by default if the employer is in "default of compensation payments for thirty days or more." *Id.* § 921. However, Section 428 does not address what amounts to a "default," such that the period for measuring the 30-day default period may be ascertained.

---

4. In addition, the Board's regulations provide that a request for supersedeas from the WCJ's decision must be filed within the time allowed for an appeal under Section 423(a) of the Act, 77 P.S. § 853. 34 Pa.Code § 111.22. Accordingly, an application for supersedeas must be filed within twenty days after notice of the WCJ's decision has been served. *See also Snizaski v. Workers' Comp. Appeal Bd. (Rox Coal Co.)*, 586 Pa. 146, 151 n. 2, 891 A.2d 1267, 1270 n. 2 (2006).

5. Imposition of a penalty is discretionary, however, and will not be reversed on appeal absent an abuse of that discretion. *Carroll v. Workers' Comp. Appeal Bd. (U.S. Airways)*, 898 A.2d 1210 (Pa.Cmwlth.2006).

6. *Cunningham* was also overruled on other grounds by *Mark v. Workers' Comp. Appeal Bd. (McCurdy)*, 894 A.2d 229 (Pa.Cmwlth. 2006).

Claimant reads the plain language of Section 428 as if it granted an employer thirty days to pay a compensation award without fear of penalty, with a penalty-triggering "default" being deemed to occur only after the thirtieth day from the award of compensation has passed. Thus, in Claimant's view, the Act contemplates a thirty-day period in which an employer (or insurer) may pursue a supersedeas without fear of penalty. But, that is not how either Section 428, or the Act's penalty provisions, actually read. Section 428 does not address the point where a default occurs, much less fix that default at thirty days from judgment; instead, that Section **assumes** a default and then addresses the separate question of the potential summary remedy afforded to claimants once that default has **persisted for** thirty days. By the same token, the penalty provisions in the Act are not made contingent upon the expiration of thirty-day grace periods following a violation. To the contrary, Section 430(b) makes an insurer or employer "subject to a penalty" upon termination, increase, or refusal to pay an award, with no time-qualification or grace period. Similarly, Section 435 authorizes tribunals to impose penalties for "violations," without addressing grace periods. Under the statutory construct, then, a penalty is at least theoretically available the very day a default occurs; thus, a "refusal to make a payment" could warrant a penalty if it persisted for a single day. In short, it is apparent that Section 428 of the Act does not set forth the thirty-day, penalty-free supersedeas construct advanced by Claimant

(and accepted by the Commonwealth Court).

The Act does, however, recognize that an employer or insurer may seek a supersedeas. *See, e.g.,* 77 P.S. § 971(b). . . . The Board's regulations governing supersedeas practice are both necessary and complementary to the Act and [the Act's delegation of authority to the Board], as [the regulations] filled the statutory void by adopting a procedure which would ensure the timely resolution of supersedeas requests. . . .

. . . .

When the Act and the Board's supersedeas regulations are read *in pari materia,* the logical conclusion is that an employer can be deemed in default only if it fails to seek supersedeas while pursuing additional review or refuses to make a compensation payment after its supersedeas request is denied. To hold otherwise would render the Board's supersedeas regulations and authority a nullity.

586 Pa. at 161–63, 891 A.2d at 1276–78 (footnote omitted, bold emphasis in original, underlining added).

Thus, as our Supreme Court makes clear, pursuant to the Act, an employer's obligation to pay compensation benefits under an award is immediate; the Act and accompanying regulations do not provide for *any* grace period, thirty-days or otherwise. While employer will not be in default if it pursues an appeal and seeks supersedeas, where an award is not appealed or supersedeas is not sought, it is not clear how quickly employer must pay to avoid being found in default, i.e., in violation of the Act.[7] That issue need not be decided here, however.[8] Assuming, *ar-*

---

**7.** In addressing this issue post-*Snizaski,* we must be careful to keep in mind the distinction between two different but closely related concepts, whether employer violated the Act (which is a question of law) and whether a

penalty is appropriate (which is a determination within the WCJ's sound discretion).

**8.** Obviously, even though the obligation to pay arises as soon as the award is entered, instantaneous payment is not a practical possibility.

*guendo,* that employer fulfilled its statutory obligation by issuing the appropriate checks eighteen days after the WCJ's award, when employer was notified that claimant's check had not been signed, it intentionally delayed payment in an attempt to obtain a letter of resignation. The delay in payment was not due to the pursuit of an appeal and request for supersedeas, or for any other justifiable cause. Consequently, employer's actions constituted a refusal to make payment in violation of the Act. Therefore, the WCJ was free to impose a penalty as a sanction. The penalty imposed fell well within the permitted range and was not excessive. Accordingly, the WCJ did not abuse his discretion in awarding the penalty.

Based upon the foregoing, the order of the Board is affirmed.

### ORDER

AND NOW, this 17th day of May, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

Absent regulations setting forth a bright line period within which payments must follow compensation awards, it would appear that the legal issue will henceforward depend on the facts of each case, as does the discretionary issue regarding imposition of penalties. *Snizaski* would seem to suggest a rule of reason—*i.e.,* whether employer acted with reasonable diligence—as the appropriate standard for measuring compliance with the Act. *See also ANR Freight System v. Workers' Comp. Appeal Bd. (Bursick),* 728 A.2d 1015 (Pa.Cmwlth.1999) (stating that compensation payments must be prompt and unconditional).