GRAPHIC PACKAGING,
INC., Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (ZINK),
Respondent.

George Zink, Petitioner

v.

Workers' Compensation Appeal Board
(Graphic Packaging),
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 13, 2007.

Decided July 24, 2007.

Michael J. McCadden, Media, for designated petitioner, Graphic Packaging, Inc.

Jerome P. Foley, Mt. Pocono, for respondent, George Zink.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Graphic Packaging, Inc. (Employer) and George Zink (Claimant) have filed cross-petitions for review of the May 3, 2006, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to award benefits to Claimant for a closed period and to grant Claimant's penalty petition. We affirm in part, and we reverse in part.

Employer hired Claimant, a Vietnam War veteran, as a maintenance mechanic pursuant to the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (Veterans' Act).[1] During his military service, Claimant sustained numerous injuries and now suffers from post-traumatic stress disorder (PTSD), which, *inter alia*, leaves him unable to sleep at night. Consequently, for the thirteen years that Claimant worked for Employer, he traded shifts with other employees so that he always could work the third (night) shift. However, in September 1995, Employer adopted a rotating shift schedule, which required Claimant to rotate between day shift, second shift and third shift. Due to the shift changes, Claimant was unable to get the sleep and rest he needed, and Claimant began to suffer increased stress, ulcer flare-ups and a worsening of pain in his leg and low back. Claimant and his treating physician repeatedly requested that Employer place Claimant on third shift permanently, but Employer refused. On July 23, 1996, Claimant informed his supervisor that he had to leave his employment because he could no longer handle the stress caused by the rotating shifts.

On August 7, 1996, Claimant filed a claim petition seeking benefits as of July 24, 1996, for a work-related aggravation of his pre-existing physical and mental injuries. Employer filed an answer denying the allegations, and the matter was assigned to a WCJ. By decision dated July 5, 2001, (2001 Decision), the WCJ denied Claimant's claim petition. The WCJ credited Claimant and his medical witnesses and determined that Employer's rotating shift schedule aggravated Claimant's PTSD; however, relying on *Metropolitan Edison Company v. Workmen's Compensation Appeal Board (Werner)*, 553 Pa. 177, 718 A.2d 759 (1998), the WCJ reluctantly concluded that this aggravation was not compensable under the Workers' Compensation Act (Act)[2] because a rotating

---

1. Pub.L. No. 93–508, 88 Stat. 1578 (1974). The Veterans' Act amended Title 38 of the United State Code in order to promote the welfare of Vietnam era veterans in several ways, including the promotion of employment opportunities for these veterans. *See Zink v.*

*Workers' Compensation Appeal Board (Graphic Packaging, Inc.) (Zink I )*, 828 A.2d 456 (Pa. Cmwlth.2003), *appeal denied,* 580 Pa. 702, 860 A.2d 126 (2004).

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

shift schedule did not constitute an abnormal working condition. The WCAB affirmed.

On further appeal, we reversed. Distinguishing *Metropolitan Edison*,[3] we held that Claimant had sustained his burden of proving that he was subjected to abnormal working conditions, which rendered him temporarily totally disabled as of July 24, 1996. We then remanded the matter "for an appropriate award based on the WCJ's finding that Zink could return to work by January 1997 due to a stabilization of his condition."[4] *Zink v. Workers' Compensation Appeal Board (Graphic Packaging, Inc.) (Zink I)*, 828 A.2d 456, 460 (Pa. Cmwlth.2003), *appeal denied*, 580 Pa. 702, 860 A.2d 126 (2004).

Employer appealed to our supreme court but did not request supersedeas. Ultimately, the supreme court denied review, and the matter was remanded to the WCJ pursuant to our order in *Zink I*. Subsequently, Claimant filed a penalty petition alleging that Employer violated the Act by failing to timely pay Claimant benefits pursuant to this court's decision in *Zink I*. The remanded claim petition and the penalty petition were consolidated for consideration by the WCJ.

In his August 10, 2005, decision (Remand Decision), the WCJ incorporated by reference the Findings of Fact from the 2001 Decision. In addition, the WCJ found: (1) Claimant was temporarily totally disabled as a result of a work-related aggravation of his PTSD as of July 24, 1996; (2) Employer's witness, Stephen Seals, credibly testified that Employer had work available for Claimant on the third shift as of August 20, 1996; and (3) Dr. Sembrot, one of Claimant's treating physicians, credibly testified that, as of a December 24, 1996, office visit, Claimant was able to return to work on a permanent third shift assignment. Based on these findings, the WCJ determined that suitable work was available to Claimant as of December 24, 1996, when Claimant was able to resume that work. The WCJ awarded Claimant benefits for temporary total disability from July 24, 1996, through December 24, 1996, with benefits suspended thereafter. (Remand Decision, Findings of Fact "A," Nos. 1–5.)

With regard to Claimant's penalty petition, the WCJ found that: (1) in *Zink I*, dated July 10, 2003, this court held that Claimant was entitled to benefits from July 24, 1996, at least until January 1997; (2) Employer did not obtain a supersedeas from the decision in *Zink I*; and (3) Em-

---

**3.** We reasoned that, unlike the situation in *Metropolitan Edison* where the claimant had no pre-existing conditions, Employer here knew about Claimant's pre-existing conditions when it hired Claimant under the Veterans' Act; Employer was aware that Claimant worked the third shift for thirteen years to accommodate those conditions; and Employer received repeated warnings from Claimant and Claimant's treating physician that working other shifts exacerbated Claimant's condition. Nevertheless, Employer required Claimant to continue to work rotating shifts.

**4.** Specifically, in *Zink I* we held:
[Claimant] presented competent and unequivocal testimony which established that

he became temporarily totally disabled as of July 24, 1996. .... Accordingly, as [Claimant] has *demonstrated a compensable injury under the Act*, the Court reverses the order of the [WCAB] and remands this case for an appropriate award based on the WCJ's finding that [Claimant] could return to work by January 1997 *due to a stabilization of his condition.*

**ORDER**

AND NOW, this 10th day of July, 2003, the order of the Workers' Compensation Appeal Board is reversed, and this case is remanded for purposes consistent with the foregoing opinion.
828 A.2d at 460 (emphasis added).

ployer did not pay benefits to Claimant until December 2004. The WCJ then concluded that Employer egregiously violated the terms of the Act by failing to pay Claimant benefits until seventeen months after this court's order in *Zink I* and directed Employer to pay a penalty of forty percent. (Remand Decision, Findings of Fact "B," Nos. 1–4.) Both Employer and Claimant appealed the Remand Decision to the WCAB, which affirmed. Employer and Claimant now appeal to this court, and the appeals have been consolidated for our disposition.[5]

## I. Employer's Appeal (1066 C.D. 2006)

■ Employer argues that the WCJ erred in finding that it violated the Act by not paying Claimant benefits within thirty days of this court's July 10, 2003, order in *Zink I*, and, therefore, the WCJ abused his discretion by granting Claimant's penalty petition based on this finding.[6] Employer maintains that, because this court's order in *Zink I* did not *expressly* direct Employer to pay an amount certain to Claimant, but rather remanded the matter to a WCJ for an appropriate award, our order in *Zink I* imposed no obligation upon Employer to pay Claimant *any* benefits under the Act.

Claimant responds that the WCJ properly exercised his discretion in granting the penalty petition because this court's *Zink I* decision and order clearly imposed an obligation on Employer to pay benefits from July 24, 1996, at least until January 1997. Moreover, Claimant asserts that the record is clear as to the amount of weekly compensation owed Claimant pursuant to Claimant's Statement of Wages, which Employer itself introduced into the record. In fact, Claimant points out that Employer paid Claimant benefits in December 2004, eight months *before* the WCJ issued his Remand Decision.

■ Employer relies on *Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.)*, 651 A.2d 623 (Pa.Cmwlth.1994), *appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995), and argues that its liability does not arise until a WCJ has issued an award for a specific compensation *amount*. In *Jaskiewicz*, the claimant sustained a work-related injury for which the employer accepted liability in a notice of compensation payable (NCP). Subsequently, the employer filed a modification petition alleging that the claimant's disability had changed and that he was able to return to work. Thereafter, a WCJ granted the employer a supersedeas reducing the amount of the claimant's benefits from total to partial. Despite that order, the employer unilaterally stopped paying partial benefits, and the claimant requested penalties. The employer subsequently filed a termination petition alleging that the claimant's work-related injury had ceased. Following hearings, the WCJ granted the employer's termination petition and dismissed the modification petition and the claimant's penalty petition as moot. The WCAB affirmed, and on appeal to this court, we also affirmed. After determining that termination of benefits was properly granted, we concluded that the

---

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. The question of whether an employer has violated the Act is a question of law, which is fully reviewable by this court. *Mercer Lime and Stone Company v. Workers' Compensation Appeal Board (McGallis)*, 923 A.2d 1251 (Pa. Cmwlth.2007). However, whether a penalty is awarded is within the WCJ's sound discretion. *Id.*

WCJ correctly refused to award penalties based on the employer's unilateral stoppage of payments. In so doing, we relied on the plain language of section 435(d)(i) of the Act, which states:

> The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
>
> (i) Employers and insurers *may be penalized a sum not exceeding ten per centum of the amount awarded* and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i) (emphasis added). We concluded that, because section 435(d)(i) contemplates an award of penalties as a percentage of the compensation amount awarded, there could be no penalty imposed where the amount of compensation awarded was zero, notwithstanding that a violation of the Act may have occurred.

In making its argument here, Employer would have us construe *Jaskiewicz* to mean that there must be a prior WCJ award of a sum certain before penalties may be imposed. Instead, *Jaskiewicz* quite plainly means only that a WCJ cannot award a penalty under section 435(d)(i) of the Act unless a claimant is awarded[7] benefits because the amount of a penalty is based on a percentage of the amount of benefits awarded.[8] Here, unlike the claimant in *Jaskiewicz* who was awarded zero benefits, Claimant was awarded benefits pursuant to the Act.

■ The purpose of section 435 of the Act is to provide the Department of Labor and Industry (Department) with the powers and mechanisms needed to enforce the Act and to *require employers to make reasonably prompt payment of compensation*. *Keystone Trucking Corporation v. Workmen's Compensation Appeal Board*, 40 Pa.Cmwlth. 326, 397 A.2d 1256 (1979). In this case, Claimant's entitlement to compensation benefits under the Act was adjudicated in our July 10, 2003, decision in *Zink I*, thereby, trigging Employer's obligation to make prompt payment of those benefits. Employer cannot claim it lacked knowledge of the amount that was due because Employer introduced Claimant's undisputed Statement of Wages into evidence, and Employer paid those benefits in December 2004.

---

7. An "award" is a "final judgment or decision." *Black's Law Dictionary* 147 (8th ed.2004). The award here granted Claimant benefits.

8. In fact, where an employer has failed to act on its undeniable obligation for compensation, we have upheld the imposition of penalties, even absent a specific award amount. *See e.g., Johnstown Housing Authority v. Workers' Compensation Appeal Board (Lewis )*, 865 A.2d 999 (Pa.Cmwlth.2005) (upholding the award of penalties for a violation of the Act where the employer failed to issue an acceptance document after the claimant gave the employer notice of the work-related injury, the claimant treated with a panel physician beyond the required period of time and the employer created a modified position for the claimant); *Spangler v. Workmen's Compensation Appeal Board (Ford )*, 145 Pa.Cmwlth. 56, 602 A.2d 446 (Pa.Cmwlth.1992) (upholding the award of penalties for an employer's failure to promptly investigate a claimant's reported injury, even though the employer was actively contesting the claim but ultimately agreed to pay benefits, where the employer did not pay benefits until over ten months after injury and four months after its own physician concluded that the claimant sustained a work-related injury).

■ We have held that an employer violates the Act if it does not begin to make payments within thirty days of the date on which its obligation to pay arises. *Thomas v. Workers' Compensation Appeal Board (Delaware County )*, 746 A.2d 1202 (Pa.Cmwlth.2000). Moreover, it is well-settled that only the grant of a supersedeas will obviate an employer's obligation to pay compensation and that, absent a supersedeas, the employer carries the burden of paying workers' compensation benefits during the litigation period. *Crucible, Inc. v. Workers' Compensation Appeal Board (Vinovich )*, 713 A.2d 749 (Pa. Cmwlth.1998); *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation )*, 676 A.2d 690 (Pa. Cmwlth.), *appeal denied,* 546 Pa. 658, 684 A.2d 559 (1996).[9] Although Employer did not request supersedeas here; nevertheless, it argues that it had no obligation to pay benefits.

Accepting Employer's argument that our court's order triggers no legal obligation renders the supersedeas provisions of the Act meaningless. *See* section 430(b) of the Act, 77 P.S. § 971(b) (stating, *inter alia,* that an employer who refuses to make any payment provided for in the decision *without filing and being granted a supersedeas* shall be subject to a penalty as provided for in section 435 of the Act). If our orders do not impose an obligation on an employer to pay benefits unless the order *expressly* directs the employer *to pay an amount certain* then employers who prevail before the WCJ and WCAB, but who lose before this court, no longer must request and receive a supersedeas to relieve themselves of the obligation to pay benefits while appealing to our supreme court. Rather, the employer could merely petition for an appeal to the supreme court, thereby delaying the remand of the matter to the WCJ for the "award," without paying the claimant benefits to which the claimant is entitled and without incurring any risk that penalties will be imposed for nonpayment. Such a result requires claimants to bear the burden of *not* receiving benefits during the litigation process and runs counter to the previously stated principle that, absent a grant of supersedeas, it is the employer's burden to pay compensation benefits throughout the litigation period. *Crucible, Inc.* Moreover, Employer's argument ignores the realities of workers' compensation proceedings which, as is the case here, can continue for years. Ever mindful of the well-settled principle that the Act is remedial in nature and must be liberally construed in order to effectuate its humanitarian purpose, *see e.g., Sell v. Workers' Compensation Appeal Board (LNP Engineering )*, 565 Pa. 114, 771 A.2d 1246 (2001); *Zuback v. Workers' Compensation Appeal Board (Paradise Valley Enterprise Lumber Company )*, 892 A.2d 41 (Pa.Cmwlth.), *appeal denied,* 590 Pa. 664, 911 A.2d 938 (2006), we refuse to take such a position.

■ Here, Employer did not request supersedeas yet made no payments to Claimant until *seventeen months* after its obli-

---

9. Recently in *Snizdski v. Workers' Compensation Appeal Board (Rox Coal Company )*, 586 Pa. 146, 891 A.2d 1267 (2006), our supreme court stated that an employer's obligation to pay compensation benefits under an award is immediate, and that an employer can be deemed in default if it fails to seek supersedeas while pursuing additional review or refuses to make a compensation payment after its supersedeas request is denied. We understand that, in *Snizaski,* the employer knew the amount of benefits because that amount had been calculated by the WCAB. However, the holding in *Snizaski* pertains to this case where Employer similarly knew the amount to be paid based on Claimant's undisputed Statement of Wages, which included the calculation of the amount of compensation payable.

gation to do so was settled by our order in *Zink I.* Thus, we agree with the WCAB that the WCJ did not err in finding that Employer's conduct violated the Act.[10] Accordingly, the WCJ was free to impose a penalty based on a percentage of Claimant's compensation award as a sanction.[11]

## II. Claimant's Appeal (1544 C.D. 2006)

Claimant asserts that the WCJ erred in suspending his benefits as of December 24, 1996, based on his findings that, as of that date, Claimant could return to permanent third shift work and that Employer made that position available. Claimant argues that: (1) the WCJ's suspension of benefits as of December 24, 1996, is inconsistent with his findings in the 2001 Decision (as relied upon in *Zink I* ) that Claimant could have returned to work in January 1997; and (2) he is entitled to ongoing benefits based on Employer's refusal to make work within his limitations available to him when he was released to work in January 1997.

Relying on *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Baxter )*, 550 Pa. 658, 708 A.2d 801 (1998),[12] Employer responds that the WCJ properly suspended Claimant's benefits as of December 24, 1996, because the work-related aggravation of Claimant's pre-existing condition had *resolved* as of that date, and, therefore, Claimant was no longer entitled to benefits. However, unlike the situation in *Baxter,* there was no determination here that Claimant's work-related injury had completely resolved. To the contrary, the WCJ specifically found that Claimant's disability had *decreased* and stabilized to the point that Claimant was capable of returning to a permanent modified position. (2001 Decision, Findings of Fact, No. 78.) Significantly, the WCJ did not terminate Claimant's benefits in December 24, 1996, but *suspended* those benefits, thereby implicitly finding that Claimant still had a residual work-related injury.[13]

10. We note that there is no requirement that the employer must have knowingly violated the Act before penalties may be imposed. *Essroc Materials v. Workers' Compensation Appeal Board (Braho )*, 741 A.2d 820 (Pa. Cmwlth.1999).

11. Assessment of penalties, as well as the amount of penalties imposed, is discretionary, and, absent an abuse of discretion by the WCJ, we will not overturn the penalty on appeal. *Id.; see also* section 435(d) of the Act. Employer here does not challenge the amount of the WCJ's penalty award.

12. In *Baxter,* the claimant suffered from pre-existing, non-work-related asthma, and, while employed as a welder by the employer, sustained a work-related injury caused by an aggravation of that condition after being exposed to paint fumes at work. The employer paid the claimant benefits for the related period of disability. After a period of time, the claimant's lung functions *returned to normal,* but, on his physician's recommendation, the claimant did not return to the work because that would again aggravate his pre-existing condition. The claimant applied for workers' compensation benefits, which the WCJ granted. The WCAB and this court both affirmed, concluding that when a return to work would exacerbate a pre-existing condition, the employee is entitled to benefits even if the pre-existing condition is not work related. The supreme court disagreed, concluding it undermines the principles of the Act to impose liability on an employer for a pre-existing condition *when no residual work-related injury is demonstrated.* Because the claimant had *completely recovered* from the work-related injury, i.e., aggravation of asthma, and his loss of earning power was due solely to non-work-related causes, the supreme court held that the claimant was ineligible for benefits.

13. *See Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Company )*, 537 Pa. 223, 642 A.2d 1083 (1994) (stating that the nature of suspension status acknowledges a continuing medical injury and suspends benefits only because the claimant's earning power is currently not affected by the injury).

Section 413 of the Act provides, *inter alia,* that a WCJ may, at any time, suspend an award of compensation payable where an employer can establish that a claimant's work-related disability has *decreased* to the point that he is capable of performing his pre-injury job *or other such work* without loss of earnings *and that such work is available.*[14] 77 P.S. § 772. In *Rollins Hudig Hall of Pennsylvania v. Workers' Compensation Appeal Board (Banks* ), 715 A.2d 522 (Pa.Cmwlth.1998),[15] we held that where, as here, a claimant is released to return to a modified job, the employer is required to show job availability within the limitations caused by the claimant's work injury.

■ We agree with Claimant that the WCJ improperly suspended Claimant's benefits as of December 24, 1996, based on the WCJ's finding that Employer had a permanent modified position available for Claimant as of August 20, 1996.[16] (Remand Decision, Findings of Fact "A," No. 3.) Although the WCJ found that Employer had a job within Claimant's limitations which it was willing to make available to

Claimant as of August 20, 1996, (Remand Decision, Findings of Fact "A," No. 3), because Claimant was temporarily totally disabled and unable to work in August 1996, this job *was not available* to Claimant *as a matter of law.* *See Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company* ), 516 Pa. 240, 532 A.2d 374 (1987) (where our supreme court excluded several positions offered by an employer to show job availability where the jobs were "available" two years *prior* to the claimant's medical release to return to work). Moreover, Employer presented no evidence that it made work available to Claimant within his limitations once Claimant was released to work. In fact, Employer's August 20, 1996, letter and Stephen Seals' testimony indicate that Employer's offer of a suitable position for Claimant *expired* at 3:00 p.m. on Monday, August 26, 1996. (*See* O.R., Deposition of Stephen Seals at 24–25; and Employer's Exhibit 5 attached to Seals' Deposition.) Thus, having failed to establish a basis to suspend Claimant's benefits, Employer is liable for, and obligated to

14. In *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels* ), 560 Pa. 12, 742 A.2d 649 (1999), our supreme court held that, even in a claim petition proceeding, the initial burden of proof associated with job availability is generally allocated to the employer once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant.

15. In *Rollins Hudig Hall,* the claimant sustained a work-related injury in the nature of bilateral carpal tunnel syndrome and received benefits for that work-related injury from August 10, 1993, through June 30, 1994. The WCJ suspended the claimant's benefits as of June 30, 1994, finding that, although the claimant remained totally disabled due to non-work related medical problems, her work-related injury subsided to the point where she could return to work with limitations on the claimant's work duties. *Id.* The WCAB affirmed. However, we reversed the

suspension of benefits on appeal holding that the employer failed to demonstrate job availability *within the claimant's limitations* that were related to the claimant's work-related injury. *Id.*

16. We also note that the WCJ's suspension of benefits as of December 24, 1996, exceeded the scope of our order in *Zink I,* in which we remanded the matter for an appropriate award "based on the WCJ's findings that [Claimant] could return to work by *January 1997* due to a stabilization of his condition." 828 A.2d at 460 (emphasis added). *See Clark v. Workers' Compensation Appeal Board (Wonder Bread Company* ), 703 A.2d 740 (Pa. Cmwlth.1997) (stating that a WCJ should restrict remand proceedings for the purpose indicated in the remand order). Accordingly, based on our order in *Zink I,* the *earliest* the WCJ could have suspended Claimant's benefits was January 1997.

pay, Claimant benefits from July 24, 1996, and ongoing.

Accordingly, we reverse that part of the WCAB's order affirming the WCJ's suspension of Claimant's benefits. We affirm the WCAB's order in all other respects.

### ORDER

AND NOW, this 24th day of July, 2007, the order of the Workers' Compensation Appeal Board (WCAB), dated May 3, 2006, is hereby reversed to the extent that it affirmed the workers' compensation judge's suspension of George Zink's benefits as of December 24, 1996, and the WCAB's order is affirmed in all other respects.